IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>CHRISTOPHER KENNETH FLYNN,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>2:16-cr-56-RJS-PMW<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Paul M. Warner |

Defendant Christopher Flynn moves to suppress all evidence discovered from a judicially authorized wiretap obtained by the Drug Enforcement Administration (DEA). Flynn argues the wiretap was granted in violation of the Fourth Amendment. For the reasons explained below, the court DENIES Flynn's Motion.[1]

## BACKGROUND

In December 2015 a woman approached Utah law enforcement with information about a drug trafficking organization (DTO) that was distributing methamphetamine, cocaine, and heroin in the Salt Lake City area.[2] This source of information (SOI) stated she had begun to feel remorse for her actions and wanted to begin a new, crime-free life.[3] The SOI thus offered information about the DTO and its leader, Hiram Gamaliel Perez-Tapia (Gama), with whom the SOI shared a residence.[4]

---

[1] Dkt. 344.

[2] *See* Dkt. 345, Ex. C (Wiretap Affidavit) ¶ 10.

[3] *See* Dkt. 349 (United States' Opp'n to Def.'s Mot. to Suppress) at 3.

[4] *See* Dkt. 345, Ex. C ¶¶ 10–11.

The SOI was an integral part of the DTO: she transported Gama to distribute narcotics, packaged drugs, collected money, and tracked the organization's finances.[5] Because Gama is completely blind, he had to rely on the SOI and others within the organization.[6] The SOI's personal involvement in the DTO enabled her to provide crucial information about the DTO's operation. For example, the SOI explained that Gama had an associate—Jesus Alberto—who used connections in Phoenix, Arizona, to supply Gama with drugs.[7] The SOI also told law enforcement about an auto shop in Phoenix where vehicles were loaded with narcotics.[8]

DEA agents in Phoenix later confirmed that the auto shop the SOI identified was known to them and that they had recently seized a large amount of methamphetamine from that location.[9] While surveilling the shop, DEA agents saw Alberto, Gama's associate, leaving the shop.[10] The DEA agents followed Alberto, conducted a traffic stop, and arrested Alberto for possessing methamphetamine.[11]

On another occasion, the SOI contacted law enforcement to tell them about firearms and cocaine in Gama's home.[12] The SOI provided pictures of some of the weapons, and law enforcement determined that at least one of the weapons had been stolen.[13] Agents obtained a search warrant and seized 18 firearms as well as cocaine and methamphetamine.[14]

---

[5] *Id.* ¶ 10.
[6] *Id.*
[7] *Id.*
[8] *Id.* ¶¶ 10–11.
[9] *Id.* ¶ 11.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

The SOI also identified Flynn as one of Gama's major customers. She reported that Gama gave Flynn around four ounces of heroin and one pound of methamphetamine a day.[15] According to the SOI, Flynn sometimes paid for the drugs with guns.[16] Because of their dealings, Flynn was in frequent contact with Gama. Over the course of a single month (from December 2015 to January 2016), Flynn called or received calls from Gama over 300 times.[17]

The SOI was actively involved in the DTO when she first came forward, but Gama and others in the DTO eventually lost trust in her.[18] This diminished the SOI's ability to inform the DEA about the DTO's ongoing operations.[19] The DEA thus sought a wiretap of Flynn's phone to gather additional information about Flynn's and Gama's illegal activities as well as other unidentified co-conspirators.[20] Because Gama used multiple phones and frequently changed his phone number, the DEA agents also sought the wiretap of Flynn's phone to identify other phone numbers Gama was using.[21]

On January 14, 2016, a DEA agent submitted an affidavit in support of the government's application for a wiretap of Flynn's phone.[22] The affidavit recounted the information the SOI provided and the reasons a wiretap was needed.[23] A state court judge approved the wiretap application.

---

[15] Dkt. 349 at 4. Law enforcement officials already knew that Flynn was a drug distributor and that he had multiple felony convictions for possession and distribution of controlled substances. Dkt. 345, Ex. C ¶ 15.

[16] Dkt. 349 at 4.

[17] Dkt. 345, Ex. C ¶ 16.

[18] Dkt. 349 at 6.

[19] *Id.*

[20] *Id.* at 5.

[21] *Id.*

[22] *See* Dkt. 345 at 2–3.

[23] *See generally id.*, Ex. C.

## ANALYSIS

The government's wiretap application was properly approved because there was probable cause to believe Flynn was engaged in criminal activity and the SOI was reliable. Flynn disagrees, advancing several arguments attacking the authorizing judge's decision to approve the wiretap. Flynn also requests a *Franks* hearing, alleging the affidavit supporting the wiretap application contained numerous falsehoods and omitted material facts.[24] The court will take up each argument in turn.[25]

### I. There Was Probable Cause to Believe Flynn Was Engaged in Criminal Activity

Flynn argues the affidavit lacked probable cause because it does not sufficiently detail facts evidencing Flynn's criminal acts. To assess probable cause, judges consider the totality-of-the-circumstances.[26] That is, a judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."[27] Once a judge authorizes a wiretap, it is "presumed valid," and the defendant bears the burden to show otherwise.[28]

---

[24] The purpose of a *Franks* hearing is to test the veracity of an affidavit filed to support a warrant application. *See United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997).

[25] Flynn also argues the wiretap was not necessary, *see* Dkt. 345 at 30–31, but the court previously received—and rejected—the same challenge, *see* Dkts. 167, 198. Accordingly, the doctrine of issue preclusion prevents Flynn from seeking a contrary resolution of the same issue, and the court will not consider any of Flynn's necessity arguments. *See United States v. Stevens*, 723 F. App'x 629, 631 (10th Cir. 2018) ("When a court issues a final adjudication on an issue against a party on the merits after the party had a full and fair opportunity to litigate, the doctrine of issue preclusion prevents that party from later seeking a contrary resolution of the same issue."); *Bravo-Fernandez v. United States*, 137 S.Ct. 352, 358 (2016) (noting issue preclusion applies in criminal prosecutions as well as in civil litigation).

[26] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

[27] *Id.*

[28] *United States v. Radcliff*, 331 F.3d 1153, 1160 (10th Cir. 2003).

Because a magistrate's "determination of probable cause should be paid great deference by reviewing courts," this court simply "ensure[s] that the magistrate had a 'substantial basis for . . . concluding' that probable cause existed."[29]

The authorizing judge undoubtedly had a substantial basis for concluding probable cause existed as to Flynn. The core of Flynn's argument is that the affidavit is replete with information sufficient to support probable cause of Gama's illegal activity, but not of Flynn's. It is true the affidavit details Gama's role as head of the DTO. But the affidavit also contains ample facts showing Flynn's criminal activity. For example, the affidavit reported that Flynn had previous convictions involving controlled substances, law enforcement had information indicating Flynn was currently dealing drugs, and Flynn was in regular contact with Gama. Most damning, the SOI identified Flynn as one of Gama's biggest customers. The affidavit contained all these facts, and they confirm the authorizing judge had a substantial basis for concluding probable cause existed.

## II. The SOI Was Reliable

Flynn also attacks the SOI's reliability, arguing she was biased, a hardened criminal, and an integral member of the DTO.[30] In assessing an informant's reliability, the Supreme Court has recognized an informant that is right about some things "is more probably right about other facts."[31] Here, law enforcement were able to corroborate much of the information the SOI provided. DEA agents in Arizona confirmed that Jesus Alberto was collecting drugs at the auto shop the SOI identified, and law enforcement in Utah seized drugs and weapons in Gama's home

---

[29] *United States v. Martinez*, 764 F.2d 744, 746 (10th Cir. 1985) (quoting *Gates*, 462 U.S. at 236, 238–39).

[30] *See* Dkt. 345 at 26–27. Flynn's arguments that the affiant made false representations in and omitted material facts from the affidavit are addressed *infra* Part III.

[31] *Gates*, 462 U.S. at 244 (internal quotation marks and citation omitted).

based on the SOI's representations. This consistent corroboration of multiple strands of information provides strong evidence of the SOI's reliability—enough to satisfy the authorizing judge that the SOI's allegations about Flynn's involvement in the DTO were also credible.

### III. No *Franks* Hearing Is Required

Flynn also argues he is at least entitled to a *Franks* hearing because of "the abundance of misrepresentations and/or omission of material facts that pervaded the government's wiretap application."[32] The court must hold a *Franks* hearing "if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause."[33] A substantial showing that "material omissions" were excluded from the affidavit will also trigger a *Franks* hearing.[34] In other words, no hearing is required if there remains sufficient content in the affidavit to support a finding of probable cause after the allegedly false statements are set aside and the material omissions are read into the affidavit.[35] That is the case here.

Flynn maintains the affidavit contains both recklessly false statements and material omissions. First, Flynn alleges the affiant "deceived the court" by asserting the SOI "would not be effective in [the DEA's] continuing investigation of Gama and the DTO."[36] Flynn argues that was false, pointing out the SOI had access to Gama's home and was still talking to Gama when the affidavit was submitted.[37] But the affidavit nowhere states the SOI cut off communication

---

[32] Dkt. 345 at 31.

[33] *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).

[34] *Stewart v. Donges*, 915 F.2d 572, 582–83 (10th Cir. 1990).

[35] *See United States v. Zarif*, 192 F. App'x 784, 789 (10th Cir. 2006).

[36] Dkt. 345 at 28.

[37] *Id.* at 28–29.

6

with Gama. Rather, the affidavit explains that "GAMA no longer completely trusts the SOI"; so, "the SOI is no longer given all the new phone numbers that GAMA acquires."[38] Thus, even though the SOI continued to work with the DEA throughout the investigation, the agents recognized the SOI would no longer be as helpful given the eroding trust between the SOI and Gama. The court cannot conclude the affiant sought to deceive the reviewing judge where he expressly acknowledged that law enforcement was actively working with the SOI to gather intelligence.[39]

Second, Flynn alleges the affidavit suffered from material omissions about the SOI's criminal past.[40] Flynn contends if the affidavit informed the authorizing judge of the extent of the SOI's criminal past, the judge would have determined the SOI was unreliable.[41] The court disagrees. Flynn emphasizes that the affidavit does not describe the SOI's "high ranking status in the criminal enterprise"; "the wide ranging . . . reach of her criminal actions"; "her para-military training"; or "her professionally acquired skills in transportation and delivery of drug proceeds to Mexico's drug cartels."[42] But the affidavit acknowledged the SOI was personally involved in a criminal drug ring, including effectively acting as the DTO's chief financial officer.[43] The court is not persuaded that, had the affidavit gone into greater detail about the extent of the SOI's criminal past, the judge would have concluded the SOI was unreliable. Indeed, additional facts showing how intimately the SOI was involved in the DTO's operation

---

[38] Dkt. 345, Ex. C ¶ 14.

[39] Dkt. 345, Ex. C ¶ 30.

[40] Dkt. 345 at 32–34.

[41] *See id.* at 33.

[42] *Id.* at 32.

[43] *See* Dkt. 345, Ex. C ¶ 10.

likely would have made the SOI *more* reliable as it would provide further evidence of her knowledge of the DTO's enterprise.

Flynn has not made a substantial showing that the affidavit supporting the warrant application contains recklessly false statements. Nor has Flynn made a substantial showing that if the allegedly material omissions were included in the affidavit, probable cause would have been lacking. Accordingly, the court will not hold a *Franks* hearing.

## CONCLUSION

For the reasons stated, Flynn's Motion to Suppress is DENIED, and the court determines a *Franks* hearing is not warranted.

SO ORDERED this 2nd day of December 2019.

BY THE COURT:

_____
ROBERT J. SHELBY
Chief United States District Judge