IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>CHRISTOPHER KENNETH FLYNN,<br><br>        Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR A NEW TRIAL AND/OR DISMISSAL OF THE CASE [Dkt. 680]**<br><br>2:16-cr-00056-RJS<br><br>Chief District Judge Robert J. Shelby |

Before the court is Defendant Christopher Kenneth Flynn's Motion for a New Trial and/or Dismissal of the Case[1] and a supplemental brief in support of the Motion.[2]  For the reasons explained below, the Motion is DENIED.

## BACKGROUND AND PROCEDURAL HISTORY[3]

### I.        Investigation and Arrest

In 2015, a confidential informant approached Utah law enforcement with information about a drug trafficking organization (DTO) that was distributing methamphetamine, cocaine, and heroin in the Salt Lake City area.[4]  The informant offered information about the DTO's leader, Hiram Gamaliel Perez-Tapia, and its major customers and sub-distributors.[5]  Agents

---

[1] Dkt. 680.

[2] Dkt. 797.

[3] Given the parties' familiarity with the underlying facts of this longstanding case, the court will present only those facts necessary to establish context before turning to the pending Motion.  More detailed facts will be provided in analyzing the issues below.

[4] *See* Dkt. 599-1, Exhibit *Affidavit of TFO Williamson in Support of Wiretap Application* (*Affidavit*) ¶ 10.

[5] *See* Dkt. 535, *United States' Opposition to Motion for Kotteakos Hearing* (*United States' Factual Proffer*) at 10–12; *see also Affidavit* ¶ 10.

obtained a search warrant for Perez-Tapia's residence and seized 18 firearms, 628 grams of cocaine, and trace amounts of methamphetamine.[6]

The informant identified Flynn as one of Perez-Tapia's major customers and sub-distributors.[7]  According to the informant, 14 of the 18 firearms seized from Perez-Tapia's residence had been received from Flynn as payment for drugs.[8]  Law enforcement sought and obtained a wiretap of Flynn's phone to gather information about his illegal activities and identify other co-conspirators.[9]  Agents began intercepting Flynn's communications, including several conversations involving the exchange of guns for drugs and vice versa.[10]

Flynn was arrested on February 4, 2016.[11]  At his arrest, he possessed ounce-quantities of marijuana, cocaine, and methamphetamine, along with 128 grams of heroin.[12]  Flynn admitted to dealing drugs with Perez-Tapia but denied contact with most of the seized weapons.[13]

## II.    Flynn's Indictment and Pre-Trial Delays

Just before Flynn's arrest, a Grand Jury returned an Indictment charging Perez-Tapia and another member of the DTO.[14]  A Superseding Indictment issued on February 10, 2016, following the arrests of Flynn and other members of the DTO.[15]  The Superseding Indictment charged Flynn with: (1) Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C.

---

[6] Dkt. 1, *Complaint* [Sealed] ¶ 3.

[7] *United States' Factual Proffer* at 11–12.

[8] *Complaint* ¶ 3.

[9] *United States' Factual Proffer* at 14–15.

[10] *See Complaint* ¶¶ 5–8.

[11] *Complaint* ¶ 11.

[12] *Id.* ¶ 11.

[13] *Id.*

[14] Dkt. 14 *Indictment*.

[15] Dkt. 21 *Superseding Indictment*.

§ 846, (2) Conspiracy to Distribute Heroin in violation of 21 U.S.C. § 846, (3) Conspiracy to Distribute Cocaine in violation of 21 U.S.C. § 846, (4) Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A), and (5) Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(1).[16]

In the intervening years, Flynn regularly moved to continue trial as he cycled through numerous lawyers, each of whom needed time to review the voluminous discovery.[17]  Flynn also filed two Motions to Suppress the wiretap evidence, which the court denied after receiving briefing and hearing oral arguments.[18]  Meanwhile, all other named Defendants pleaded guilty.[19]

By early 2020, it seemed the parties were finally ready for trial, and a trial date was scheduled to begin March 31, 2020.[20]  In advance of trial, the United States obtained a Second Superseding Indictment, which omitted the other Defendants, dropped the Conspiracy to

---

[16] *Id.* (Counts 1, 2, 3, 6, 9).

[17] *See* Dkt. 9, *Appointment of Attorney Scott C. Williams for Flynn*; Dkt. 61, *Order Granting Motion to Substitute Attorney Michael J. Boyle*; Dkt. 139, *Minute Entry for Hearing Granting Boyle's Motion to Withdraw and Appointing CJA Counsel David Shapiro*; Dkt. 256, *Notice of Attorney Appearance of David V. Finlayson*; Dkt. 268, *Minute Entry: Hearing Granting Finlayson's Motion to Withdraw and appointing CJA Counsel Joel Kittrell*; Dkt. 282, *Minute Entry for Hearing Appointing CJA Counsel Fred Metos as Co-Counsel to Joel Kittrell*; Dkt. 300, *Order Granting Motion to Substitute Bel-Ami de Montreux*.

Flynn filed nine Motions to Continue before March 2020.  *See* Dkt. 67, *Motion to Continue Trial*; Dkt. 202, *Motion to Continue Trial*; Dkt. 262, *Stipulated Motion to Continue Trial*; Dkt. 271, *Stipulated Motion to Continue Trial*; Dkt. 275, *Stipulated Motion to Continue Trial*; Dkt. 286, *Motion to Continue*; Dkt. 299, *Motion to Strike or Reset Deadlines and Trial*; Dkt. 312, *Motion to Continue Trial and Extend Deadlines*; Dkt. 335, *Motion for Extension of Time to File Pretrial Motions*.  The court uniformly granted those motions, recognizing the difficulty new counsel faced in reviewing the voluminous discovery in this case.  *See, e.g.*, Dkt. 341, *Minute Entry for Hearing Granting Motion and Vacating Trial Date*.

[18] Dkt. 167, *Motion to Suppress Wiretap* I; Dkt. 196, *Minute Entry*: Motion Hearing re: Motion to Suppress I; Dkt. 344, *Motion to Suppress Wiretap* II; Dkt. 350, *Minute Entry*: Motion Hearing re: Motion to Suppress II.

[19] *See* Dkt. 143, *Minute Entry*: Change of Plea Hearing as to Linda Selsa Jaramillo; Dkt. 173, *Minute Entry*: Change of Plea Hearing as to Jesus Alberto Parra-Tizoc; Dkt. 186, *Minute Entry*: Change of Plea Hearing as to Hiram Gamaliel Perez-Tapia; Dkt. 215, *Minute Entry*: Change of Plea Hearing as to Isaac Mateo-Rodriguez; Dkt. 221, *Minute Entry*: Change of Plea Hearing as to Marcos Ivan Serrano-Serrano.

[20] *See* Dkt. 354 (*Minute Entry for Status Conference*) (setting trial date of March 31, 2020).

Distribute Cocaine count, but otherwise charged Flynn with counts identical to those in the Superseding Indictment.[21]

Unfortunately, the advent of the COVID-19 pandemic in March 2020 meant Flynn's trial date had to be continued.[22]  In the intervening two years, the pandemic caused additional delays,[23] Flynn changed counsel yet again,[24] and Flynn filed several Motions to Continue, mostly stipulated, in light of Flynn's new counsel needing time to obtain and review voluminous discovery.[25]  Following these delays, a trial date was eventually scheduled for February 1, 2022.[26]  In advance of that trial date, in December 2021, the court held two pre-trial conferences and resolved several Motions in Limine, and three more Motions to Suppress the wiretap evidence filed by Flynn.[27]

The Omicron wave of the COVID-19 pandemic hit the District of Utah in early 2022, causing the court to enter a general order vacating all jury trials between January 5, 2022 and February 15, 2022.[28]  Flynn's trial date was continued and reset to start July 26, 2022.[29]

---

[21] *See* Dkt. 371 (*Second Superseding Indictment*) (charging Flynn with Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 846 and punishable pursuant to 21 U.S.C. § 841(b)(1)(A), Conspiracy to Distribute Heroin in violation of 21 U.S.C. § 841(a)(1) and 846 and punishable pursuant to 21 U.S.C. § 841(b)(1)(A), Possessing a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A), and Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(1)).

[22] *See* Dkt. 388 (*Order Excluding Time Under the Speedy Trial Act and Setting a New Trial Date*).

[23] *See* Dkt. 415 (*Order Excluding Time*); Dkt. 420 (*Order Excluding Time*); Dkt. 431 (*Order Excluding Time*); Dkt. 478 (*Order Excluding Time*); Dkt. 491 (*Order Excluding Time*); Dkt. 499 (*Order Excluding Time*).

[24] *See* Dkt. 407 (*Order Granting Motion to Substitute Michael J. Boyle*).

[25] *See* Dkt. 443 (*Motion to Continue Trial*); Dkt. 476 (*Stipulated Motion to Continue Trial*); Dkt. 489 (*Stipulated Motion to Continue Trial*); Dkt. 497 (*Stipulated Motion to Continue Trial*).

[26] *See* Dkt. 507 (*Amended Trial Order*).

[27] *See* Dkt. 555 (*Minute Entry for Pretrial Conference held on 12/16/2021*); Dkt. 558 (*Minute Entry for Pretrial Conference held on 12/29/2021*).

[28] *See* Dkt. 583 (*Order to Continue*) at 2.

[29] *Id.* at 5.

Shortly before his trial date was continued, Flynn moved for a *Faretta* hearing to represent himself with court-appointed standby counsel.[30]  After a hearing on the matter, Magistrate Judge Jared C. Bennett found that Flynn knowingly and voluntarily waived his right to counsel and granted his then-attorney's Motion to Withdraw.[31]  Flynn has proceeded pro se since that time.

On February 15, 2022, Flynn filed a Motion to Reset Motion Deadlines, explaining that he "went pro se [because] he believes that his lawyer at the time was purposely [sabotaging] his case" and that he wanted the chance to submit motions and make arguments that his previous attorneys would not make on his behalf.[32]  The court granted that Motion in part, allowing Flynn to file three more Motions to Suppress and one Motion to Dismiss.[33]  The court denied those Motions in a written ruling on June 15, 2022.[34]

## III.    Trial

Flynn's jury trial began on July 26, 2022, and lasted seven days.[35]  The United States provided testimony from over a dozen witnesses, including many officers from the federal Drug Enforcement Agency (DEA), and Perez-Tapia.[36]  The informant did not testify, as she had

---

[30] Dkt. 559 (*Motion to Expedite Faretta Hearing*).

[31] Dkt. 562 (*Minute Entry for Faretta Hearing*).

[32] Dkt. 584 (*Motion to Reset Deadlines*) at 1–2.

[33] *See* Dkt. 589, *Minute Entry*: March 4, 2022 Status Conference. *See* Dkt. 591 (*Motion to Dismiss Second Superseding Indictment*); Dkt. 597 (*Motion to Dismiss Second Superseding Indictment*). Dkt. 596 *(Motion to Suppress)*.

[34] Dkt. 625, *Order Denying Motions to Suppress and Motions to Dismiss*.

[35] *See* Dkt. 658, *Minute Entry*: Trial Day 1, July 26, 2022; Dkt. 659, *Minute Entry*: Trial Day 2, July 27, 2022; Dkt. 668, *Minute Entry*: Trial Day 3, July 28, 2022; Dkt. 669, *Minute Entry*: Trial Day 4, July 29, 2022; Dkt. 670, *Minute Entry*: Trial Day 5, August 1, 2022; Dkt. 671, *Minute Entry*: Trial Day 6, August 2, 2022; Dkt. 672, *Minute Entry*: Trial Day 7, August 3, 2022.

[36] Dkt. 659, *Minute Entry*: Trial Day 2, July 27, 2022; Dkt. 668, *Minute Entry*: Trial Day 3, July 28, 2022; Dkt. 669, *Minute Entry*: Trial Day 4, July 29, 2022; Dkt. 670, *Minute Entry*: Trial Day 5, August 1, 2022; Dkt. 671, *Minute Entry*: Trial Day 6, August 2, 2022.

passed away during the case's pendency.[37]  The evidence included firearms, drugs, text message exchanges between Flynn and Perez-Tapia, and audio of wiretap conversations between Flynn and Perez-Tapia.[38]  Federal officers testified to the relevance and authenticity of the evidence.

Flynn proceeded on a theory that Perez-Tapia was a liar,[39] the wiretaps and phone pings were plagued with inconsistencies,[40] federal officers never saw Flynn deal drugs, and law enforcement provided conflicting testimony.[41]

On August 3, 2022, the jury returned a guilty verdict on all four charges.[42]  The court then gave Flynn until Friday, September 2, 2022 (thirty days) to file post-trial motions.[43]  Shortly before his time expired, Flynn filed a Motion for Assistance to Get Transcripts, explaining the transcripts were necessary to his post-trial motions.[44]  Meanwhile, Flynn filed eleven post-trial motions.[45]  The government filed oppositions to the motions by October 20, 2022.[46]

---

[37] Dkt. 625 at 48.

[38] Dkt. 627, *Exhibit List*.

[39] Dkt. 731, *Trial Transcript Day 7* at 1231.

[40] *Trial Transcript Day 7* at 1245.

[41] *Trial Transcript Day 7* at 1238–43.

[42] Dkt. 673, *Jury Verdict*.

[43] *Trial Transcript Day 7* at 1285.

[44] Dkt. 692, *Motion for Transcripts*.

[45] Dkt. 680, *Motion for New Trial and/or Dismissal of the Case*; Dkt. 681, *Motion to Dismiss the Indictment Because the Evidence at Trial Prove a Fatal Variance from the Indictment*; Dkt. 682, *Motion for a New Trial and to Suppress All Evidence Handled by Agent Amy Deneff*; Dkt. 684, *Motion to Lower the Conspiracy Quantities of Drugs in Count One and Count Two*; Dkt. 685, *Motion to Overturn the Jury's Verdict of Guilty to a Verdict of Not Guilty on All Counts or At Least Make the Right Decisions*; Dkt. 688, *Motion to Suppress Wiretap Evidence and All Fruits Derived Therefrom*; Dkt. 689, *Motion to Unstrike Motion to Suppress*; Dkt. 691, *Motion for a Mistrial the Court and Prosecution Committed an Important Legal Error*; Dkt. 693, *Motion for Mistrial Based on Juror Misconduct for Falling Asleep During Testimony*; Dkt. 695, *Motion for Mistrial because Agent Guillen Testified He Does Not Recall the Alleged Confession but was Granted by the Court to Allow His Testimony About It In Front of the Jury*; Dkt. 702, *Motion for Mistrial because the United States Informed the Jury of a Pay-owe Sheet that was Never Admitted Into Evidence*.

[46] *See generally* Dkts. 722–27; Dkts. 733–35; Dkts. 739–40.

The court held a hearing on October 7, 2022 to discuss the status of the post-trial motions and production of the trial transcript.[47]  Flynn had not yet received the transcript so the court arranged for his stand-by counsel to deliver the transcript to him at jail.[48]  Flynn was given until November 29, 2022 to file his replies in support of his post-trial motions.[49]  A hearing was set for December 22, 2022 to rule on the post-trial motions.[50]

At the same time, Flynn was set for sentencing.[51]  Flynn moved the court to extend sentencing until after the post-trial motions were decided but the court denied that motion.[52]  Flynn was sentenced to 236 months with credit for time served.[53]

Shortly before the court was set to rule on the post-trial motions, Flynn filed a new Motion for supplemental briefing.[54]  Specifically, Flynn requested the opportunity to "support his argument with trial transcripts."[55]  Because Flynn did not receive the transcript until after he finished briefing the post-trial motions, and the United States did have full access to the transcript in their briefing, Flynn argued it would be "unfair prejudice" to deny him the opportunity to "file additional information to his motions using the trial transcripts."[56]

---

[47] Dkt. 721, *Minute Entry Oct. 7, 2022.*

[48] Dkt. 721, *Minute Entry Oct. 7, 2022.*

[49] Dkt. 759, *Docket Text Order Granting Motion for Extension of Time.*

[50] Dkt. 749, *Notice of Hearing.*

[51] Dkt. 763, *Notice of Hearing.*

[52] Dkt. 764, *Motion to Extend Sentencing Until All Post-Trial Motions are Ruled on by the Court*; Dkt. 767, *Docket Text Order Denying Motion to Extend Sentencing.*

[53] Dkt. 773, *Minute Entry for Dec. 12, 2022 Sentencing.*

[54] Dkt. 778, *Motion Requesting the Court to Allow Mr. Flynn to File Additional Information to his Post-Trial Motions because he never had his Trial Transcripts to Include with his Arguments in his Motions.*

[55] *Id.* at 1.

[56] *Id.* at 2.

In an oral ruling delivered at the scheduled time to rule on the post-trial motions, the court granted in part the Motion for supplemental briefing.[57]  The court determined three post-trial motions did not require additional briefing and issued oral rulings denying the motions at the hearing.[58]  One motion was denied as moot in a docket text order.[59]  The court granted Flynn's motion for supplemental briefing on the seven remaining post-trial motions:

      1.     [Dkt. 680] Motion for New Trial and/or Dismissal of the Case

      2.     [Dkt. 681] Motion to Dismiss Indictment Because the Evidence At Trial Proved A Fatal Variance from the Indictment

      3.     [Dkt. 684] Motion to Lower the Conspiracy Quantities of Drugs in Count One and Count Two

      4.     [Dkt. 685] Motion to Overturn the Jury's Verdict of Guilty to a Verdict of Not Guilty on All Counts (or At Least Make the Right Decisions)

      5.     [Dkt. 691] Motion for Mistrial (the Court and Prosecution Committed an Important Legal Error)

      6.     [Dkt. 695] Motion for Mistrial Because Agent Robert Guillen Testified He Does Not Recall The Alleged Confession but was Granted by the Court to Allow His Testimony About It In Front of the Jury

      7.     [Dkt. 702] Motion for Mistrial Because the United States Informed the Jury of a Pay-Owe Sheet that was Never Admitted Into Evidence

The court set a supplemental briefing schedule with the intention of scheduling a hearing to rule on the motions after briefing was complete.[60]  However, the court stayed the briefing the next month to allow the Federal Bureau of Prisons sufficient time to designate and transport Flynn to

---

[57] Dkt. 783, *Minute Entry for Dec. 22, 2022.*

[58] *Id.*

[59] Dkt. 747, *Order Denying as Moot Motion to Unstrike* [Dkt. 689].

[60] Dkt. 783.

a facility, and to allow stand-by counsel additional time to ensure Flynn received his copy of the transcript.[61]

On May 9, 2023, the court received notice that Flynn had been placed in a facility and received his copy of the trial transcript.[62]  The next day, the court entered a new supplemental briefing schedule.[63]

Now that supplemental briefing is complete, and finding oral argument will not be materially helpful, the court is prepared to rule.  Due to the number of post-trial motions and issues for review, the court will take up the motions in separate companion orders.  This Order addresses only the Motion for New Trial and/or Dismissal of the Case.[64]

## LEGAL STANDARDS

Flynn proceeds pro se.  While the court "liberally construe[s] pro se pleadings," "pro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules."[65]  Additionally, when a criminal defendant "intelligently and voluntarily waive[s] his Sixth Amendment right of active participation and assistance of trial counsel," that defendant receives "no greater rights than a defendant represented by counsel. . . and the trial court is under no obligation to become an advocate or to assist and guide the pro se layman through the trial thicket."[66]

---

[61] Dkt. 789, *Order Granting Motion for Extension of Time and Staying Post-Trial Supplemental Briefing Deadlines.*

[62] Dkt. 794, *Notice Regarding Trial Transcripts.*

[63] Dkt. 796, *Order Granting Motion for Extension of Time.*

[64] Dkt. 680 [hereinafter *Motion for New Trial*].

[65] *Ogden v. San Juan Cnty.,* 32 F.3d 452, 455 (10th Cir. 1994) (citation omitted); *see also United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019) (applying same standard to pro se criminal defendant).

[66] *United States v. White*, 68 F. App'x 870, 874–75 (10th Cir. 2003) (citing *United States v. Pinkey*, 548 F.2d 305, 311 (10th Cir. 1977) (internal quotation marks omitted)).

Federal Rule of Criminal Procedure 33 allows a court to grant a new trial "if the interest of justice so requires."[67]  District courts are "accorded discretion in ruling on such a motion," and may freely "weigh the evidence and assess witness credibility."[68]  However, "a motion for new trial is regarded with disfavor and should only be granted with great caution."[69]

## ANALYSIS

Flynn seeks a new trial on thirteen separate grounds, all of which fall into two main categories: 1) claims based on new evidence, and 2) claims based on jury instructions.[70]  The court will address the claims within the context of these categories, beginning with the relevant governing legal standards before analyzing the individual requests for relief.

## I.  NEW EVIDENCE

Flynn first seeks a new trial based on "new and important evidence that couldn't have been discovered prior to trial."[71]  Flynn identifies six discoveries he made during trial that had not previously been disclosed.[72]  Flynn asserts "this exculpatory evidence" was "kept from [him]" and was "favorable to [his] defense" "to the point of dismissal."[73]  The United States construes Flynn's arguments as requesting a new trial based on newly discovered evidence and argues, in part, that all of Flynn's claims fail because none of the evidence was discovered after

---

[67] Fed. R. Crim. P. 33(a).

[68] *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999).

[69] *Id.* at 1146; *see also, e.g.*, *United States v. Mounkes*, 204 F.3d 1024, 1027–28 (10th Cir. 2000).

[70] *See generally Motion for New Trial*; Dkt. 797, *Motion for a New Trial and/or Dismissal of the Case Including the Trial Transcripts as a Supplemental Brief* (*Supp. Brief*) at 1–17, 24–27.

[71] *Motion for New Trial* at 1; *see also* Dkt. 797, *Supp. Brief* at 1.

[72] *Motion for New Trial* at 1–4; *Supp. Brief* at 1–17, 24–27.

[73] *Supp. Brief* at 5, 6; *Motion for New Trial* at 3; *see also Supp. Brief* at 12 ("[T]he government still intentionally did not give me the physical extraction to one of my phones."), 27 ("This becomes extremely prejudice and must grant a new trial.").

trial.[74]  To qualify for a new trial based on newly discovered evidence, a defendant must first

show "the evidence was discovered after trial."[75]

While this argument is well taken, the court has an obligation to construe Flynn's

pleadings liberally.[76]  Even though Flynn labeled his claims as seeking a new trial based on "new

and important evidence," the substance of his arguments appears more akin to alleged *Brady*

violations.[77]  Under *Brady,* "[d]ue process requires a new trial if the government suppresses

evidence that is material to guilt or punishment."[78]  To establish a *Brady* violation, "a defendant

must demonstrate: (1) the prosecution suppressed evidence, (2) the evidence was favorable to

defendant, and (3) the evidence was material."[79]  This mirrors Flynn's arguments that the United

States withheld exculpatory evidence favorable to his case and material to the outcome.[80]  For

that reason, the court evaluates Flynn's requests for a new trial based on claims of newly

discovered evidence under the *Brady* framework.

Flynn claims he discovered at trial six key pieces of evidence which were withheld by the

government: (1) a 2015 informant agreement, (2) investigative reports from an auto shop in

Arizona, (3) debriefing report of a related criminal defendant, (4) phone ping data, (5) a physical

---

[74] *See* Dkt. 802, *United States' Memorandum in Opposition to Defendant's Supplemental Brief Re Motion for a New Trial* (*Opp. Memorandum*) at 2–12.

[75] *See Quintanilla*, 193 F.3d at 1147; *see also United States v. Maestas*, 523 F.2d 316, 320 (10th Cir. 1975) ("Before a new trial for newly discovered evidence should be granted, the defendant has the burden to show [t]hat the evidence was discovered since trial.").

[76] *Ogden,* 32 F.3d at 455.  Were the court to review Flynn's claims as seeking a new trial based on newly discovered evidence, they would fail since Flynn concedes all the evidence was discovered at trial.  *See Supp. Brief* at 2–17, 24–27.

[77] *See Brady v. Maryland*, 373 U.S. 83 (1963) (holding that prosecutors must turn over to a criminal defendant all exculpatory evidence and a failure to do so violates an accused's due process).

[78] *United States v. Herrera*, 51 F.4th 1226, 1242 (10th Cir. 2022).

[79] *Quintanilla*, 193 F.3d at 1149.

[80] *Supp. Brief* at 5, 6; *Motion for New Trial* at 3; *see also Supp. Brief* at 12 ("[T]he government still intentionally did not give me the physical extraction to one of my phones."), 27 ("This becomes extremely prejudice and must grant a new trial.").

extraction report from the N-51 phone, and (6) the identity of a drug customer used in a sting operation.[81]  Flynn further claims this suppressed evidence is exculpatory and material to his defense.

Only evidence that creates a reasonable probability of a different outcome is considered material to a case and constitutes a *Brady* violation.[82]  Exculpatory evidence, impeachment evidence, and even evidence affecting the credibility of a witness can all fall within *Brady* if sufficiently material to the outcome.[83]  While the Tenth Circuit previously stated there can be no violation "when the *Brady* material is made available to defendants during trial," it has since explained the court must still examine "whether the circumstances of disclosure during a trial were such as to prejudice the defense."[84]  Thus, "the materiality inquiry focuses on whether earlier disclosure would have created a reasonable doubt of guilt."[85]  A defendant must sufficiently "articulate to the district court the reasons why the delay should be regarded as materially prejudicial" before obtaining relief.[86]  This cannot be met through "vague complaints about an effect on trial strategy."[87]  It requires showing the delayed disclosure sufficiently altered defendant's strategy such that it materially prejudiced the defense and casts doubt on the verdict.[88]

---

[81] *Supp. Brief* at 1–17, 24–27.

[82] *Smith v. Cain*, 565 U.S. 73, 75 (2012).

[83] *See United States v. Young*, 45 F.3d 1405, 1408 (10th Cir. 1995) ("Impeachment evidence as well as exculpatory evidence falls within the *Brady* rule."); *Herrera*, 51 F.4th at 1242 ("Evidence may be material even when it affects only the credibility of a witness.").

[84] *United States v. Burke*, 571 F.3d 1048, 1055–56 (10th Cir. 2009) (internal citations and quotations omitted).

[85] *United States v. Woodlee*, 136 F.3d 1399, 1411 (10th Cir. 1998) (quoting *Young*, 45 F.3d at 1408).

[86] *Id.* at 1056.

[87] *Herrera*, 51 F.4th at 1252; *see also Young*, 45 F.3d at 1409 ("Similarly, appellant's vague assertion that the late disclosure affected preparation of the defense is not sufficient.").

[88] *See Burke*, 571 F.3d at 1055–56.

As explained below, Flynn fails to establish any of the alleged suppressed evidence discovered at trial warrants relief under *Brady*.

### A. 2015 Informant Agreement

Flynn claims that at trial he discovered the informant signed an agreement with federal agents in December 2015, whereas Flynn only has record of an agreement signed in January 2016.[89]  Flynn argues this earlier agreement is "important exculpatory material" and materially prejudicial to "challenging the wiretap and impeach[ing]" witnesses.[90]  On this issue, there is no *Brady* violation because Flynn cannot demonstrate any of the necessary elements.

First, Flynn cannot show the prosecution suppressed any evidence.  At trial, a federal agent testified that he met with the informant in December 2015 and she agreed to cooperate with police at that time.[91]  Flynn interprets this agent's testimony as "stat[ing] on the record" that a December 2015 informant agreement exists.[92]  According to Flynn, the United States suppressed this evidence because a 2015 agreement was never produced in discovery despite Flynn's requests.[93]

But both federal agents and the prosecutor clarified this testimony.  One agent testified at trial, "I'm sure she was referenced as a confidential source.  That is a very common thing.  She was not signed up by the DEA at the time."[94]  Another agent reiterated, "Any time I make

---

[89] *Motion for New Trial* at 1–2; *Supp. Brief* at 2–3.

[90] *Supp. Brief* at 3; *see Motion for New Trial* at 2.

[91] Dkt. 729, *Trial Transcript Day 2* at 233–234.

[92] *Motion for New Trial* at 2–3.

[93] *Supp. Brief* at 3.

[94] *Trial Transcript Day 2* at 308–09.

contact with somebody that provides me with information, I list them as a confidential source."[95]
When Flynn raised the issue to the court, the prosecutor explained further,

> "[T]he first time we meet with someone we don't always sign them up right then. We are going to see if they are telling us the truth and we're going to corroborate it and we're going to check things out and we're going to start doing our investigation into that person to see if they are even eligible to be signed up. . . . It takes a minute.  That is all."[96]

The prosecutor clarified that the United States "ha[d] provided everything" they had concerning the informant.[97]  While Flynn insists the agent's testimony proves a December 2015 informant agreement exists, the court cannot agree.  Thus, Flynn has not established the government suppressed evidence.

Flynn's claim is likewise deficient on the other two *Brady* elements.  He fails to demonstrate how this alleged 2015 informant agreement would be favorable to him such that it materially prejudiced his defense and casts doubt on the verdict.  He argues a 2015 agreement "could have had such important exculpatory evidence concerning the confidential source for arguments such as *Illinois v. Gates*[98] and otherwise illegal activity committed by a confidential source," [99] and it was favorable to him in "challenging the wiretap, and impeachment material."[100]  But these assertions lack specificity—they are conclusory and vague complaints about how this agreement may have been favorable and affected trial.  Without more, the court is

---

[95] Dkt. 711, *Trial Transcript Day 6* at 972.

[96] Dkt. 730, *Trial Transcript Day 5* at 780.

[97] *Id.* at 777.

[98] Based on the court's own review, it appears Flynn is referencing *Illinois v. Gates*, 462 U.S. 213 (1982), a case where the Supreme Court concluded an anonymous source, without more, could not provide sufficient probable cause to conduct a search of an individual's car and home.  Because Flynn did not elaborate on this case or its application here, the court declines to consider it more.

[99] *Motion for New Trial* at 2.

[100] *Supp. Brief* at 3.

14

unable to conclude any alleged suppressed evidence concerning the informant violated Flynn's

due process rights under *Brady*.

### B.  Arizona Auto Shop Investigative Report

Flynn next argues the prosecution suppressed federal reports and surveillance information

for an auto shop in Arizona that housed drug distributors supplying the Utah drug trafficking

organization tied to Flynn.[101]  This evidence, according to Flynn, "is exculpatory material to

prove inconsistency and perjury on witnesses,"[102] and "prove whether or not Mr. Perez received

his drugs from this Phoenix Arizona Operation."[103]  Flynn does not establish a *Brady* violation

on this issue.

To start, there is no basis to hold the United States suppressed evidence.  Flynn claims a

federal agent "testifie[d] these reports of this DEA Phoenix investigation of Mr. Perez's suppliers

exist."[104]  In support, he quotes the following testimony:

> *Flynn:* Did you ever witness the source in Arizona? Did you ever surveil or have
> any type of operation in Arizona?
>
> *Agent:* Yes.
>
> *Flynn*: Oh, you did?
>
> *Agent*: Uh-huh.
>
> *Flynn*: And they stated they seen Mr. Perez-Tapia go to this—
>
> *Agent:* Jesus Mateo.
>
> *Flynn:* I have never seen these reports at all showing that you guys had ever
> followed him to Arizona.

---

[101] *Motion for New Trial* at 2; *Supp. Brief* at 3–4.

[102] *Motion for New Trial* at 2.

[103] *Supp. Brief* at 5.

[104] *Id.*

> *Agent:* No, we didn't follow him to Arizona.  There was another case that was going on in Arizona in which –
>
> . . .
>
> *Flynn:* This whole operation in Arizona has nothing to do with me then, otherwise you would have charged me with that in my indictment is what you're saying?
>
> *Agent:* That is not what I'm saying.  What I'm saying is that this organization goes all the way to the cartel based in Phoenix, but for your specific case we didn't charge him with any of that portion.  That is what I'm saying.
>
> *Flynn*: So then it has nothing to do with my case?
>
> *Agent*: They are the suppliers.[105]

Flynn claims this testimony coupled with grand jury testimony shows "the DEA did have surveillance of this shop."[106]  The grand jury testimony states, "When I looked up [the] locations [where co-conspirators were in Phoenix] I was able to co-locate them with cases that Phoenix DEA currently had on file."[107]

Yet nothing in this testimony indicates there are DEA surveillance and investigative reports on the auto shop in question.  The testimony confirms surveillance of operations in Arizona, and connections between locations used by the Utah drug organization and other cases on file.  It does not, however, confirm there exist DEA reports on the auto shop in Phoenix that were suppressed by the government.

Moreover, the government has consistently stated it has no reports on this investigation.  Flynn sought the same in discovery and the government stated it had "provided to the defense all its discovery regarding the auto shop in Arizona."[108]  And at trial, when Flynn insisted there was

---

[105] *Trial Transcript Day 2* at 347–48, 349.

[106] *Motion for New Trial* at 2.

[107] Dkt. 680-2, *Motion for New Trial Ex. 2: Grand Jury Testimony* at 6.

[108] Dkt. 544, *Memorandum in Opposition to Defendant's Motions (1) to Continue the Jury Trial; and (2) to Compel Discovery* at 8; *see also id.* ("Recently, counsel for the United States and an agent from the DEA ran a search within a DEA nationwide database for information relating to the auto shop but found none.  It is believed that the auto-

a report and he was entitled to it, the government reiterated, "there is no DEA record."[109] Accordingly, the court cannot find the government suppressed this evidence.

Without identifying any suppressed materials, Flynn also cannot establish materiality.[110] He claims it would be impeachment evidence and would prove the source of Perez-Tapia's drugs, but this is conjecture.  Thus, as to the alleged *Brady* violation for failing to produce reports on the auto shop in Arizona, Flynn has not met his burden.

### C. Serrano-Serrano Debriefing

Flynn also argues the United States withheld evidence concerning Perez-Tapia's supplier, Filliberto Serrano-Serrano, who presumably possesses "information favorable to [Flynn's] defense."[111]  Flynn speculates Serrano-Serrano received an allegedly short sentence because he confessed to only distributing small amounts of drugs.[112]  Thus, according to Flynn, Serrano-Serrano would provide exculpatory testimony because "[w]hatever Filliberto debriefed about must have contradicted or proved Mr. Perez's testimony false concerning" the quantities of drugs being distributed.[113]

This claim suffers from numerous deficiencies.  As an initial matter, the claim is not properly before the court.  Flynn did not raise it in his initial, timely motions.  The first time he brought this claim was in his supplemental briefing to his Motion for New Trial.[114]  But the

---

shop investigation was conducted by local law enforcement in Arizona; the United States and its trial team do not have access to additional records.").

[109] Dkt. 709, *Trial Transcript Day 3* at 517.

[110] *Quintanilla*, 193 F.3d at 1149 (requiring a defendant to show suppressed evidence was material before finding a *Brady* violation).

[111] *Supp. Brief* at 6.

[112] *Id.*

[113] *Id.*

[114] *See Motion for New Trial* at 6.

supplemental briefing was only authorized to allow Flynn the opportunity to supplement his arguments with citations to the trial transcripts, not raise completely new unrelated arguments.[115]

Nevertheless, on the merits Flynn fails to make any of the required showings to establish a *Brady* violation.  He argues the "evidence concerning this individual and his debriefing was kept from me."[116]  It's not entirely clear what evidence was withheld—Serrano-Serrano's arrest or information he gave upon arrest.[117]  Either way, the whole premise of Flynn's argument is based upon speculation and conjecture that Serrano-Serrano would provide favorable testimony. Flynn assumes there is information the government should have disclosed because he assumes Serrano-Serrano's debriefing contradicts Perez-Tapia because he assumes Serrano-Serrano got a lighter sentence due to testifying that he distributed small quantities of drugs.[118]  None of this creates a reasonable probability of a different outcome at trial.  Flynn is not entitled to a new trial based on a *Brady* claim concerning Serrano-Serrano.

### D.  Phone Ping Data

Flynn next argues a report containing ping data for Perez-Tapia's phone was never provided.  This data was requested by Flynn in discovery but the United States never provided it due to certain records not being retained by DEA.[119]  Flynn claims "[t]he ping data would have proved that the reports of [DEA agent] and his testimony were false" and "[t]he deletion and not preserving this exculpatory evidence is extremely prejudice to the defendant and his right to a fair trial."[120]  This argument fails.

---

[115] *See* Dkt. 783, *Minute Entry for Dec. 22, 2022.*

[116] *Motion for New Trial* at 6.

[117] *Id.*

[118] *Id.*

[119] *Trial Transcript Day 3* at 404–05.

[120] *Supp. Brief* at 7.

To start, there is no evidence that was withheld.  Flynn acknowledges any possible ping data was deleted.[121]

However, even if ping data were available, Flynn cannot show its disclosure would change the result of the proceeding.  Flynn acknowledges this evidence was sought to impeach a federal agent's credibility.[122]  "Evidence may be material even when it affects only the credibility of a witness."[123]  But "an incremental amount of impeachment evidence on an already compromised witness does not amount to material evidence."[124]  Such is the case here.

Flynn has conflicting investigative reports that indicate Perez-Tapia was in Arizona and Utah at the same time.[125]  Flynn sought the ping data to discredit one agent and his report.[126]  At trial, Flynn repeatedly challenged the agent's credibility on this point:

> *Flynn*: On January 7th, the same day as the report you just read you were conducting surveillance on Perez?  That's the same day; correct?
>
> *Agent*: It is.
>
> *Flynn*: Now where does it show Mr.Perez at during the time of those pings?
>
> *Agent*: Kingman, Arizona.
>
> . . .
>
> *Flynn*: So there's no way this one pound could have been delivered by Mr. Perez if he's in Kingston, Arizona; correct?
>
> *Agent*: Correct.

---

[121] *Supp. Brief* at 7; *Motion for New Trial* at 3–4.

[122] *Supp. Brief* at 7.

[123] *Herrera*, 51 F.4th at 1242.

[124] *United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir. 1998).

[125] *See* Dkt. 680-5, *DEA Report*; Dkt. 680-6, *Agent Guillen Report*.

[126] *Supp. Brief* at 7 ("The ping data would have proved that the reports of Agent Matt Fairbanks and his testimony were false.").

> *Flynn*: If Mr. Perez is in Kingston, Arizona, then this alleged 40 pounds of meth and 10 kilos of heroin is not here yet; correct?
>
> *Agent*: If he's transport it, then no.
>
> *Flynn*: Okay.  So this report of January 7 surveillance that was multiple agents being involved in . . . appears to be false; am I right? Or is your statement false . . .?
>
> *Agent*: I would not say that my statement would be false.  I'm not going – I'm not certain why there's a discrepancy here.
>
> *Flynn*: Well, that's a huge discrepancy, don't you think?  We got a thorough report by multiple agents on January 7th claiming Mr. Perez delivered a one pound methamphetamines to [co-conspirator].  And you actually conducted ping data . . . But based off your report agents found [distributor] in Arizona the entire time that surveillance took place on January 7th.[127]

Flynn also asked three different government witnesses about the contradictory evidence, pressing them on the veracity of the police reports observing the distributor delivering drugs in Utah at the same time he was pinged in Arizona.[128]  In closing arguments, Flynn again highlighted the discrepancy, asking the jury "How can you fact finders actually find facts when everyone keeps lying to you?  Agents have witnessed this man in Kingston, Arizona on January 7th, but in another report from a lead agent finds that man in Kearns at the same time.  That does not add up."[129]  Given his continual use of these facts at trial, it's hard to tell how disclosure of the actual evidence could provide much additional benefit, much less provide a benefit that would reasonably affect the outcome of the trial.[130]  No ping evidence was suppressed and even if it was, it was not sufficiently material to Flynn's guilty verdict and therefore does not constitute a *Brady* violation.

---

[127]  *Trial Transcript Day 6* at 979–82.

[128]  *Trial Transcript Day 3* at 337–344; *Trial Transcript Day 5* at 820–26, 831; *Trial Transcript Day 6* at 979–991, 1054.

[129]  *Trial Transcript Day 7* at 1245.

[130]  *See Herrera*, 51 F.4th at 1251.

### E.  Physical Extraction Report

Flynn also points to evidence from his cell phones that he believes the government suppressed.  Flynn asserts the government withheld physical extraction reports that show the government illegally tapped his phone calls and without those conversations he would not have been convicted.[131]  The government contends it provided Flynn all the reports for his phones and did so multiple times.[132]  On the record before the court, there is no *Brady* violation.

It is not entirely clear what extraction reports Flynn believes the government suppressed. The government searched two phones belonging to Flynn: N-50, and N-51.[133]  At points in his briefing, Flynn asserts he received one physical extraction report from the government during trial (N-50), and is currently requesting the second (N-51).[134]  Still, at other points he claims he has not received the extraction reports for either phone.[135]  Regardless, Flynn fails to demonstrate the prosecution suppressed any extraction reports.

Flynn's claim mainly rests on testimony from government witness Darrell Dain.[136]  Mr. Dain worked with the DEA to examine Flynn's cell phones as part of the investigation in this case.[137]  Mr. Dain testified he used a forensics extraction tool to copy both Flynn's cell phones

---

[131] *See Motion for New Trial* at 2–3; *Supp. Brief* at 8–17.

[132] *Opp. Memorandum* at 9–10.

[133] *Supp. Brief* at 10 ("Both N-50 and N-51 are my cell phones.").

[134] *Motion for New Trial* at 2 ("The United States only provide one physical extraction report during my trial. . . . The defendant has only a logical extraction report on the other phone[.]"); *id.* at 3 ("The defendant is asking the Court to also order the physical extraction report by Darral Dain for evidence N-51 be provided to the defendant."); *Supp. Brief* at 12 ("[T]he Government still intentionally did not give me the physical extraction to one of my phones."

[135] *Supp. Brief* at 10 ("Both N-50 and N-51 are my cell phones and those physical extraction reports were never provided or disclosed to me prior to trial or even to this date, I still have not received the full extraction reports or the physical extraction reports for these cell phones."); *id.* at 17 ("Therefore the newly discovery physical extraction reports that has not yet been provided to me is prejudice and grounds for a new trial.").

[136] *Motion for New Trial* at 2–3; *Supp. Brief* at 8–10.

[137] *Trial Transcript Day 2* at 366–67.

(N-50, N-51) and saved the information to Blu-ray disks.[138]  He then explained there are two types of extractions: "There is a physical extraction which is basically the whole phone, and there is a logical extraction, which it can't get into the actual metadata on the phone.  It can provide things like calls and all that kind of stuff, but it can't get into programming."[139]  On Flynn's phones, Mr. Dain performed physical extractions.[140]  Mr. Dain confirmed the physical extraction reports would include a call log, text messages, and GPS data "if it was on the phone."[141]  Fynn's argument is that the extraction reports he did receive were missing key information showing times and locations of conversations he had with co-conspirators.[142]  Given Mr. Dain testified that this information could be found in an extraction report, Flynn concludes the government suppressed key information in the extraction reports.[143]

Flynn's conclusion is based on a misunderstanding of a physical extraction report. This was explained at trial when Flynn argued he was missing extraction information:

> *United States*: So it's not like a menu at a restaurant when you're downloading a phone where you pick what you want and what you don't want.  You get the entire phone, a forensic copy from A to Z, start to finish. Everything that's on the phone you get.  You know, the phone's not all made the same, and the data inside the phone are certainly unique to all of us.  So sometimes you have it, and sometimes you don't. . . .
>
> *Court*: Are you say, can I just interpret a little bit? Are you saying that some phones either because of the phone type of the operating system on the phone or for some other reason may not contain location data that you could easily extract from a different phone? Is that what you're saying?

---

[138] *Id.* at 367.

[139] *Id.* at 370.

[140] *Id.* at 372.

[141] *Id.*

[142] *Motion for New Trial* at 3; *Supp. Brief* at 15.

[143] *Supp. Brief* at 15 ("The reports would show our locations and the times we met amongst each other.  The exhibits of the extraction report provides an analysis of accurate information proving me and Mr. Perez never communicated over the wiretap phone line.").

> *United States*: Certainly.  I can think of examples in my own cases where that's the case, yes.
>
> *Court*: So you think anything that's missing is a product of what was able to be extracted and what wasn't there, is that what you're saying?
>
> *United States*: Yes.[144]

And later, the government reiterated this point, "I may just remind [Flynn] that the physical extractions are preferred but they are not perfect."[145]  Thus, the court cannot conclude the government suppressed evidence based solely on the fact that, according to Flynn, information was missing from the physical extraction reports.

Flynn also appears to argue that technology errors at trial show the government suppressed the physical extraction reports.[146]  For trial, the government provided Flynn with a tablet loaded with the extraction reports.[147]  However, the files for the N-50 and N-51 phones were either empty or would not load.[148]  Flynn claims this shows "the United States never provided me with my discovery that I needed to prepare for trial."[149]  But this represents only a portion of the United States' efforts to provide Flynn with the physical extraction reports.  Once the government discovered the issues with the tablet, it printed the files Flynn requested so he could review them for trial.[150]  These reports had previously been printed for Flynn and he had

---

[144] *Trial Transcript Day 3* at 525–526.

[145] *Trial Transcript Day 5* at 771.

[146] *Motion for New Trial* at 2; *Supp. Brief* at 11–12, 14–15.

[147] *Trial Transcript Day 4* at 572.

[148] *Trial Transcript Day 3* at 522–23.

[149] *Supp. Brief* at 14.

[150] *Trial Transcript Day 3* at 522–25, 527.

hired an investigator who was given access to the phones to make copies of the files.[151]  At trial, the government repeatedly asserted "we gave [Flynn] everything that we have."[152]  And at two points during trial, Flynn and stand-by counsel conceded he received the extraction reports for N-50 and N-51.[153]  The problem, according to Flynn, was that the information was incomplete.[154]  This argument essentially rehashes Flynn's first argument—concluding the government suppressed the full extraction reports because the reports Flynn received were missing information he believed should be present.  As explained, the reports are not foolproof, and this is insufficient to establish the government violated its *Brady* obligations.  The court denies Flynn's claim on this ground.

## F.  Sting Operation Customer

In Flynn's final claim, he argues he discovered at trial the identity of a customer in a drug deal arranged by the informant.[155]  The drugs were purchased by a co-conspirator and, according to Flynn, later used to find him guilty at trial.[156]  And because the informant arranged the deal, Flynn argues this constitutes entrapment.[157]

---

[151] *Trial Transcript Day 3* at 402–404, 481–82, 522–25, 527; *see also Trial Transcript Day 4* at 566 ("We've provided these records to the defendant at least six times, and I'm estimating low on purpose.  We printed out records from Mr. Flynn's phones several weeks ago for him.  We printed them out yesterday . . . .  We've been printing all night long.  We'll continue to print.  I have more things to give him today, not because we haven't first given it to him six years ago and given it to him consistently as he's changed attorneys since then, but because we want to ensure he has what he needs to cross-examine witnesses today.").

[152] *Trial Transcript Day 5* at 771; *see also Trial Transcript Day 3* at 524 ("I will do my best not to repeat anything I've said previously, like that we've handed it over several times or that the defendant came and got his own copies when he was dissatisfied."); *id.* at 525 ("[W]hatever is in there we've given to him and will continue to give to him[.]"); *Trial Transcript Day 4* at 575 ("We've done everything we can to try to give him what he needs, and we have been doing it for years.").

[153] *Trial Transcript Day 3* at 402, 483.

[154] *Trial Transcript Day 3* at 522; *Trial Transcript Day 6* at 961.

[155] *Supp. Brief* at 27.

[156] *Id.*

[157] *Id.*

But this argument was raised for the first time in the supplemental brief.  It was not brought in one of the timely post-trial motions.  Moreover, the information Flynn asserts was withheld—was not.  It was disclosed in discovery and Flynn used it at trial to question a federal agent about the drug deal in question.[158]  Thus, Flynn cannot show any *Brady* violation on this ground.

## II.    INSTRUCTIONAL ERRORS

Flynn also seeks a new trial based on allegedly improper jury instructions.[159]  "Failure to properly instruct the jury requires a new trial if the jury might have based its verdict on the erroneously given instruction."[160]

When reviewing a claim for instructional error, the court must review the instructions as a whole to see "whether the jury was provided with sufficient understanding of the applicable standards."[161]  Instructions do not need to be "faultless in every way."[162]  Rather, they merely must ensure the jury understood the issues and its role in deciding the issues.[163]  Some of the factors to consider in evaluating the instructions are: "(1) the language of the instruction,

---

[158] Dkt. 544, *Ex. A* at 2 (chart listing discovery documents produced for Flynn); Dkt. 680-5, *Ex. 5* (surveillance report from Jan. 8, 2016 discussing drug deal arranged by informant); *Trial Transcript Day 2* at 339–40.  In his Response to the United States supplemental briefing, Flynn again asserts he first discovered the identity of the customer at trial and discovery documents just stated "customer."  Dkt. 808, *Response to United States Opposition in Memorandum to Defendant's Supplemental Brief Re: Motion for a New Trial* at 2.  However, a discovery index filed in 2021 shows Flynn received an investigative report from January 8, 2016 with Bates stamp 126–128.  *Ex. A* at 2.  That document clearly states: "[Agent] was informed by the [informant] that Perez and Mateo had delivered the point of methamphetamine to **Jaramillo**[.]" *Ex. 5* at 3 (Bates No. 128).  This report is the exact report Flynn was questioning the agent about at trial when he claims he discovered for the first time, through the agent's testimony, the identity of the customer.  *Trial Transcript Day 2* at 339–43.

[159] *Motion for New Trial* at 4–8; *Supp. Brief* at 18–24.

[160] *Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1221 (10th Cir. 2008) (internal citation and quotation omitted).

[161] *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1198 (internal citation and quotation omitted).

[162] *Durflinger v. Artiles*, 727 F.2d 888, 895 (10th Cir. 1989).

[163] *Id.*

(2) whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations."[164]

A district court has "substantial discretion" in formulating jury instructions.[165] While the court must ensure the instructions correctly state the law and address the issues presented, a judge may properly refuse to give a particular instruction if it reflects "an abstract statement of the law unrelated to the facts of the case" or "if the point of law it refers to is fairly and adequately otherwise covered by the instructions."[166] In reviewing instructions for error, the court "uphold[s] the judgment in absence of substantial doubt that the jury was fairly guided."[167]

Flynn challenges the jury instructions on eight bases. The court will take up each argument in turn.

## A.  Error in Instructions 3 and 10

Flynn argues the court erred in instructing the jury that Flynn's questions were not evidence and not to be considered as such.[168] The United States argues the court may properly reject this argument without discussion because it is untimely—it was not raised in Flynn's original Motion for New Trial.[169] The court agrees.

"Other than a claim of newly discovered evidence, 'a defendant may not add new arguments in support of a motion for new trial by including them in an amendment filed after the time . . . has expired.'"[170] Flynn did not raise this argument in his original Motion and it is now

---

[164] *Dansie*, 42 F.4th at 1198 (internal citation and quotation omitted).

[165] *United States v. Lopez-Terrazas*, 53 F.3d 343 (10th Cir. 1995) (table).

[166] *United States v. Pena*, 930 F.2d 1486, 1492 (10th Cir. 1991) (internal citation and quotation omitted); *Oertle v. United States*, 370 F.2d 719, 726 (10th Cir. 1996).

[167] *United States v. Magleby*, 241 F.3d 1306, 1310 (10th Cir. 2001) (internal citation and quotation omitted).

[168] *Supp. Brief* at 18.

[169] *Opp. Memorandum* at 13–14.

[170] *Quintanilla,* 193 F.3d at 1148 (quoting *United States v. Custodio*, 141 F.3d 965, 966 (10th Cir. 1998)).

untimely.[171]  Supplemental briefing afforded Flynn an opportunity to supplement his original arguments with citations to the trial transcript, not to raise new arguments in support of his motion for new trial.[172]  The court will consider this argument no further.

### B.  Failure to Instruct the Jury on Perez-Tapia's Testimonial Capacity

The same result is warranted on this argument.  For the first time in his Supplemental Brief, Flynn argues the court should have instructed the jury on "what a blind witness can testify of and what a blind witness cannot testify about."[173]  The court rejects this argument as untimely.

### C.  Failure to Instruct the Jury to Disregard Agent's Testimony of Flynn's Confession

Flynn argues the court erred in refusing to instruct the jury to disregard an agent's testimony.[174]  The agent testified that Flynn confessed but indicated he did not "recall the specifics" of the confession.[175]  At trial, Flynn argued this testimony was conflicting and asserted "there should be an instruction on even allowing that testimony to come in now."[176]  The court responded by acknowledging the testimony "was confusing and at times possibly inconsistent" but declined to instruct the jury as requested because "those are matters that are classic matters for the jury to resolve, his credibility and what it is he said and what he meant and what he testified to.  Those are classic jury questions."[177]  Flynn continues to assert an instruction should

---

[171] *See* Fed. R. Crim. P. 33(b)(2) ("Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."); *see generally Motion for New Trial*.

[172] *See* Dkt. 783, *Minute Entry for Dec. 22, 2022.*

[173] *Supp. Brief* at 18.

[174] *Id.* at 19

[175] *Trial Transcript Day 6* at 1050.

[176] *Trial Transcript Day 7* at 1140.

[177] *Id.* at 1140.

have been given informing the jury to disregard his testimony.[178]  Upon review, the court finds no error.

Jury instructions are reviewed as a whole to ensure the jury "understand[s] the issues and its duty to determine these issues."[179]  Relevant here, is the jury's duty to evaluate witness testimony.[180]  "[M]atters of credibility are within the exclusive province of the jury,"[181] which includes evaluating and resolving conflicting testimony.[182]

At trial, the court gave three instructions related to the jury's duty to evaluate witness testimony.  Instruction 13 specifically addressed the agent's testimony regarding Flynn's alleged confession, explaining:

> Evidence has been presented about a statement attributed to Mr. Flynn alleged to have been made after the commission of the crimes charged in this case but not made in court.  Such evidence should always be considered by you with caution and weighed with care.  You should give any such statement the weight you think it deserves, after considering all the circumstances under which the statement was made.
>
> In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement.  For example, consider the age, gender, training, education, occupation, and physical and mental condition of Mr. Flynn, and any evidence concerning his treatment while under interrogation if the statement was made in response to questioning by government officials, and all the other circumstances in evidence surrounding the making of the statement.
>
> After considering all this evidence, you may give such weight to the statement as you feel it deserves under all the circumstances.  If you determine that the statement is unreliable or not credible, you may disregard the statement entirely.[183]

---

[178] *Supp. Brief* at 19–20.

[179] *Massey v. Farmers Ins. Grp*, 986 F.2d 1428 (10th Cir. 1993) (quoting *Durflinger v. Artiles*, 727 F.2d 888, 895 (10th Cir. 1989)).

[180] *United States v. Wilson*, 244 F.3d 1208, 1219 (10th Cir. 2001) ("The credibility of witnesses and weighing of the evidence presented are squarely within the province of the jury.").

[181] *United States v. Veng Xiong*, 1 F. 4th 848, 853 (10th Cir. 2021).

[182] *United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015); *see United States v. Ramsey*, 153 F.3d 729 (table) (10th Cir. 1998).

[183] Dkt. 674, *Jury Instructions* No. 13.

This instruction is taken directly from the Tenth Circuit Criminal Pattern Jury Instructions.[184]

Instruction 15 went on to generally explain the jury's role in evaluating witness credibility.[185]  It states:

> You, as jurors, are the sole judges of the credibility of witnesses and the weight their testimony deserves. . . . You should carefully scrutinize all of the testimony given, the circumstances under which each witness testified, and every matter in evidence which tends to show whether a witness is worthy of belief. . . . Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. . . . In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.
> After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.[186]

Much of this instruction also comes from the Tenth Circuit Criminal Pattern Jury Instructions.[187]

Finally, instruction 16 explained the jury's role in evaluating testimony as it applies to law enforcement.  It reads:

> You have heard the testimony of law enforcement officers.  The fact that a witness may be employed as a law enforcement officer does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.  You should consider and weigh the testimony the same as the testimony of other witnesses and determine the weight and credibility to be given thereto by the same rules that apply to witnesses generally.  It is your decision, after reviewing all of the evidence, whether to accept the testimony of any law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.[188]

Flynn does not identify any errors in these instructions, and the court sees none.  The instructions properly and adequately informed the jury of their duty to evaluate witness

---

[184] Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, *Criminal Pattern Jury Instructions* 1.25 (2021 ed.) [hereinafter *10th Cir. Crim. Pattern Jury Instr.*].

[185] *See Jury Instructions* No. 15.

[186] *Id.*

[187] *See 10th Cir. Crim. Pattern Jury Instr.* 1.08.

[188] *Jury Instructions* No. 16.

testimony.  The detailed instructions specifically ensured the jury understood their role and was not misled when evaluating the agent's testimony concerning Flynn's alleged confession.  The court denies Flynn's Motion on this ground.

### D.  Failure to Include Multiple Conspiracy Instruction

Flynn also argues the court erred in denying a multiple conspiracy instruction.[189]  At trial, Flynn argued for a multiple conspiracy instruction because, according to him, "The evidence that was presented and mainly talked about the most was a cocaine conspiracy, not a meth or heroin conspiracy."[190]  The court denied that request, after concluding those facts did not show multiple conspiracies.[191]  In briefing, Flynn does not identify how the jury was misled nor does he explain how the jury might have based its verdict on the alleged erroneous instruction.[192]  He simply asserts "[a] multiple jury instruction was indeed proper but was denied."[193]

In the Tenth Circuit, failure to give a multiple jury instruction is error only if "the court fails to instruct the jury that 'the government had the burden of proving beyond a reasonable doubt the single conspiracy as alleged, and that the evidence should be considered separately as to each individual defendant.'"[194]  Taken as a whole, the court's instructions explain the government's burden of proving beyond a reasonable doubt the existence of a single

---

[189] *Motion for New Trial* at 6, 8; *Supp. Brief* at 20.

[190] *Trial Transcript Day 7* at 1146.

[191] *Id.* at 1146–47.

[192] *Supp. Brief* at 20.

[193] *Id.*

[194] *United States v. Alexander*, 69 F.3d 548 (10th Cir. 1995) (quoting *United States v. Evans*, 970 F.2d 663, 675 (10th Cir. 1992)); *see also, e.g.*, *United States v. Keith*, 61 F.4th 839, 855 (10th Cir. 2023).

conspiracy,[195] and that the jury needed to consider the evidence as related to Flynn.[196]  Because the instructions satisfy the standard in the Tenth Circuit, there is no error for failing to give a multiple conspiracy instruction.

### E. Failure to Instruct Jury to Disregard Cocaine Evidence

On this claim, Flynn argues the court should have instructed the jury not to consider evidence of cocaine purchases and distribution to convict him of conspiracy to distribute methamphetamine and heroin.[197]  The implication being the jury may have improperly convicted Flynn for distributing meth and heroin based on evidence of a cocaine deal.[198]  However, the court has no trouble concluding the instructions as a whole correctly explained the law and there is little doubt the jury emjoyed proper guidance in reaching its verdict.

To start, the instructions twice informed the jury that "Mr. Flynn is not on trial for any act or any conduct not specifically charged in the Indictment."[199]  Then the instructions laid out the charges in the indictment and explained, "the first two counts relate to Mr. Flynn's involvement in a conspiracy to distribute illegal drugs, specifically Methamphetamine and Heroin."[200]  Each count was then explained in detail, frequently naming the types of drugs required to establish the conspiracy.[201]  The instructions very clearly explained the charges related only to

---

[195] *Jury Instructions* Nos. 5, 23, 30.

[196] *Id.* Nos. 23 ("If you find, beyond a reasonable doubt, that Mr. Flynn was a member of the conspiracy charged in the Indictment, then any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy, may be considered against Mr. Flynn."), 28, 30 ("If you are convinced that the charged conspiracy existed, then you must next determine whether Mr. Flynn was a member of that conspiracy[.] . . . [T]he evidence must show Mr. Flynn knowingly joined the conspiracy with the intent to advance its purposes.").

[197] *Supp. Brief* at 20.

[198] *See id.* at 21.

[199] *Jury Instructions* No. 7; *see also id.* No. 8 ("Mr Flynn is not on trial for any act, conduct, or crime not charged in the Indictment.").

[200] *Jury Instructions* No. 28.

[201] *Jury Instructions* Nos. 28, 31, 32.

methamphetamine and heroin, leaving little room for confusion or doubt.  This claim for relief is

denied.[202]

### F.  Error in Instruction 33

Flynn also challenges Instruction 33.  He argues: 1) the instruction is legally erroneous,

2) the instruction was improper under the facts of the case, 3) the instruction was ambiguous.[203]

As explained below, these arguments fail.

Instruction 33 reads:

> The law does not require the United States to prove Mr. Flynn engaged in
> multiple transactions with a coconspirator before he can be considered part of the
> conspiracy. Depending on the circumstances, even a single overt act by Mr. Flynn
> may be sufficient to connect him to the conspiracy if that act leads to a reasonable
> inference of intent to participate in an unlawful agreement or criminal
> enterprise.[204]

According to Flynn, this is incorrect because "the law here, as to Mr. Flynn, would require the

United States to prove Mr. Flynn engaged in multiple transactions with a co-conspirator before

he can be considered part of the conspiracy."[205]  But the court's instruction is an accurate

statement of law.  The language comes directly from *United States v. Pack*, 773 F.2d 261, 266

(10th Cir. 1985)[206] and remains good law in the Tenth Circuit.[207]

---

[202] Inasmuch as Flynn is trying to make a sufficiency of the evidence argument, this too fails.  *See Supp. Brief* at 21 ("Cocaine was the only drugs discussed of a purchase during the life of the wiretap between me and Mr. Perez.  This is the only transaction discussed.").  Perez-Tapia testified to purchasing large quantities of heroin and methamphetamine for Flynn to distribute and the government produced evidence of significant amounts of both heroin and meth seized from co-conspirators.  *See Trial Transcript Day 4* at 610–19; Dkt. 676, *Trial Exh.* 24, 30–36.

[203] *Motion for New Trial* at 5–7; *Supp. Brief* at 21–23.

[204] *Jury Instructions* No. 33.

[205] *Motion for New Trial* at 5.

[206] "Even a single overt act by the defendant can be sufficient to connect him to the conspiracy if that act leads to a reasonable inference of intent to participate in an unlawful agreement or criminal enterprise."  *Pack*, 773 F.2d at 266.

[207] *See, e.g.*, *United States v. Hamilton*, 587 F.3d 1199, 1206–09 (10th Cir. 2009).

Flynn also argues "[t]he evidence in this case does not support a single transaction jury instruction."[208]  Essentially, he maintains the instruction should have been excluded as unrelated to the facts in the case.  Flynn asserts there was only evidence that he engaged in a single transaction of cocaine and those facts do not warrant instructing the jury to find him guilty of a conspiracy to distribute large amounts of methamphetamine and heroin.[209]  "However, the connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt."[210]  The evidence here was more than sufficient to establish a connection between Flynn and a meth and heroin conspiracy.  Perez-Tapia testified to being part of a drug conspiracy distributing meth and heroine, and that Flynn was a co-conspirator.[211]  And the government played phone calls and showed texts connecting Flynn with Perez-Tapia and another co-conspirator.[212]

Moreover, once connected to a conspiracy, a defendant "may be held accountable—for purposes of determining the scope of liability for the conspiracy charge—with the acts or statements of coconspirators."[213]  "A defendant can be held accountable for that drug quantity which was within the scope of the agreement and reasonably foreseeable to him."[214]  Consequently, even if the government only showed Flynn directly arranged a single cocaine transaction as Flynn claims, he can be liable for the amounts of drugs distributed within the

---

[208] *Supp. Brief* at 22.

[209] *Supp. Brief* at 22.

[210] *United States v. Hamilton*, 587 F.3d 1199, 1207 (10th Cir. 2009) (quotation simplified).

[211] *Trial Transcript Day 4* at 604, 687, 736.

[212] *Trial Exh.* At 40-M, 40-D; *Trial Transcript Day 5* at 839–42 (discussing texts where Flynn arranged drug deals), 900–03 (same).

[213] *Hamilton*, 587 F.3d at 1207–08.

[214] *Dewberry*, 790 F.3d at 1030 (quoting *United States v. Arias-Santos*, 39 F.3d 1070, 1078 (10th Cir. 1994).

conspiracy to which he is connected, if foreseeable.[215]  The evidence at trial established Perez-Tapia transported large amounts of methamphetamine and heroin,[216] and texts showed Flynn's knowledge of and participation with Perez-Tapia and others in distributing meth and heroin.[217] For all these reasons, the evidence was sufficient to include Instruction 33.

Flynn further asserts the instruction was improper under *United States v. Dunmire*, 403 F.3d 722 (10th Cir. 2005).[218]  But *Dunmire* was a case assessing the sufficiency of the evidence to establish a conspiracy and is therefore inapplicable to Flynn's instructional challenge.[219]

Finally, Flynn argues Instruction 33 is ambiguous because it "does not instruct the jury what conspiracy Mr. Flynn is part of."[220]  While standing alone, Instruction 33 only contains generic references to "the conspiracy," other instructions inform this language.  Instruction 28 identifies the charged conspiracies by listing dates, the purpose, and the amounts alleged.[221] Instructions 30, 31, 32, and 34 go on to explain what a conspiracy is and outline the elements and details of the conspiracy charged to Flynn.[222]  Viewing these instructions as a whole, as is proper

---

[215] *See id.* (collecting cases); *see also United States v. Coleman*, 7 F.3d 1500, 1503 (10th Cir. 1993) ("It is fundamental that a party may join an ongoing conspiracy and become criminally liable for all acts done in furtherance of the scheme.").

[216] *Trial Transcript* Day 4 at 610–19; *see, e.g.*, *Trial Exh.* 40D–40M, 41-C, 44, 45, 47–50, 53–5, 61.

[217] *Trial Transcript Day 5* at 839–42 (discussing texts where Flynn arranged drug deals), 900–03 (same).

[218] *Motion for New Trial* at 5–6; *Supp. Brief* at 23.

[219] 403 F.3d at 724–27.  Flynn raises a sufficiency of the evidence argument in his Motion to Lower the Conspiracy Quantities of Drugs in Count One and Count Two, which the court will address in a separate order.  *See* Dkt. 684.

[220] *Motion for New Trial* at 6 ("The instruction is not specific as to the conspiracy in which Mr. Flynn is charged and tried under.").

[221] *Jury Instructions* No. 28.

[222] *Id.* Nos. 30–32.

under the law,[223] there is no ambiguity—the jury was properly instructed on the specific conspiracy for which Flynn was charged and tried.

In sum, Instruction 33 correctly articulated the law, was proper under the facts of this case, and clearly explained the necessary information.  The court concludes there was no error.

### G.  Error in Instruction 29

Instruction 29 states, "the United States is not required to prove the precise beginning or ending dates of the conspiracies in Counts 1 and 2.  The United States is likewise not required to prove the precise dates of offenses alleged in Counts 3 and 4."[224]  Flynn argues this instruction was improper due to bias and lack of notice.[225]  Both arguments fail to show an error in the instruction itself.  Nevertheless, the court reviews these arguments and concludes the instruction was properly given.

In briefing, Flynn states he "believes that Honorable Judge Robert J. Shelby made a bias unfair decision on the proposed jury instructions" because he denied Flynn's request to include a Seventh Circuit buyer-seller instruction but allowed the government to include a Seventh Circuit instruction on dates of the offenses.[226]  Adverse rulings are insufficient to show bias.[227]  A review of the record shows the court carefully evaluated both instructions and determined whether to include the instructions based on the governing law—not out of bias.[228]

---

[223] *See Dansie*, 42 F.4th at 1198 (noting jury instructions are to be considered "as a whole in determining whether the jury was provided with sufficient understanding of the applicable standards.") (internal citation and quotation omitted).

[224] Dkt. 674 at 31.

[225] *Motion for New Trial* at 7; *Supp. Brief* at 24.

[226] *Motion for New Trial* at 7.

[227] *See United States v. Nickl*, 427 F.3d 1286, 1298–99 (10th Cir. 2005).

[228] *Trial Transcript Day 7* at 1147–49 (declining to include a buyer-seller instruction because law in "the circuit is clear that the buyer-seller instruction is inappropriate in this case"); 1182–89 (evaluating whether the dates are a part of the charge and including Instruction 29 because "I'm required to give an instruction that is consistent with what the Tenth Circuit has said").

Flynn also argues Instruction 29 prejudiced him because it was included right before closing arguments "without notifying [him] of the dates being changed or no longer matter."[229] Yet Flynn was aware the dates were not an essential element of the conspiracy charges. "If an indictment is worded broadly to state that the charged crime occurred 'on or about' a certain date, 'the defendant is deemed to be on notice that the charge is not limited to a specific date.'"[230] Flynn's Second Superseding Indictment charged him with conspiracies "[b]eginning on a date unknown but at least by September 2015, and continuing through at least January 28, 2016."[231] The charges for possession of a firearm were also broadly worded, stating the crime occurred "[b]etween November 16, 2015 and December 17, 2015."[232] Additionally, through prior counsel, Flynn submitted proposed jury instructions with a substantively identical instruction:

> Joint Proposed Instruction No. 25
> Offense Committed "On or About" a Date
> The indictment charges that the offenses alleged were committed "on or about" a certain date. Although it is necessary to prove beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged in the Indictment, it is not necessary for the United States to prove that the offense was committed precisely on the date charged.[233]

All the above constitutes sufficient notice that the charges were not limited to a specific date and there was no prejudice to including Instruction 29. Both Flynn's challenges to Instruction 29 are denied.

---

[229] *Supp. Brief* at 24; *Motion for New Trial* at 7.

[230] *United States v. Ladue*, 208 F. App'x 680, 687 (10th Cir. 2006) (quoting *United States v. Mitov*, 460 F.3d 901, 908 (7th Cir. 2006).

[231] Second Superseding Indictment at 1–2.

[232] *Id.* at 2–3.

[233] Dkt. 549, *Joint Proposed Jury Instructions* (filed Dec. 13, 2021) at 33.

### H.  Failure to Include Buyer-Seller Instruction

Lastly, Flynn argues the court erred in denying his request for a Seventh Circuit buyer-seller instruction.[234]  As the court explained at trial, it "is clear that the buyer-seller instruction is inappropriate in this case" because in *United States v. Carter*, 781 F. App'x 707, 716 (10th Cir. 2019) the Tenth Circuit "explicitly rejected the Seventh Circuit's interpretation of the buyer-seller rule."[235]  The Tenth Circuit utilizes a buyer-seller instruction only where the evidence demonstrates a defendant obtained drugs from a conspiracy "on a single occasion and solely for . . . personal use."[236]  Evidence presented at trial showed Flynn repeatedly obtained drugs for distribution.[237]  Under those circumstances, the buyer-seller instruction is inapplicable.[238]  Flynn cites no new case law and points to no evidence to alter this ruling.[239]  The court concludes there was no error in declining to include a buyer-seller instruction.

For the reasons explained, all Flynn's claims of instructional error fail and the court denies his motion for new trial on these grounds.[240]

---

[234] *Motion for New Trial* at 5, 7, 8.

[235] *Trial Transcript Day 7* at 1146–47.

[236] *United States v. Gallegos*, 784 F.3d 1356, 1360 (10th Cir. 2015).

[237] *Trial Transcript Day 4* at 613–16 (Perez-Tapia testifying he would supply Flynn with 1–3 pounds of meth a day and 2–4 ounces of heroin a day).

[238] *See id.* at 1360; *see also Pena*, 930 F.2d at 1492 (explaining jury instructions may be denied if "unrelated to the facts of the case").

[239] *Motion for New Trial* at 5, 7, 8.

[240] In his original Motion, Flynn cursorily raises two other grounds for new trial based on jury instructions, claiming the court erred by adding in two instructions after the parties submitted proposed instructions and that "[t]he court gave an improper instruction during trial on Count 3 of the indictment."  *Motion for New Trial* at 4.  Flynn fails to identify any errors in the instructions however, and it is not "the proper function of the district court to assume the role of advocate for the pro se litigation."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**CONCLUSION**

For the reasons stated above, Flynn's Motion for New Trial and/or Dismissal of the Case is DENIED.[241]

SO ORDERED this 2nd day of November, 2023.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[241] Dkt. 680.