IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER KENNETH FLYNN,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS INDICTMENT [Dkt. 681], DENYING MOTION TO LOWER THE QUANTITY OF DRUGS [Dkt. 684], AND DENYING MOTION FOR MISTRIAL [Dkt. 702]**<br><br>2:16-cr-00056-RJS<br><br>Chief District Judge Robert J. Shelby |

Before the court is Defendant Christopher Kenneth Flynn's Motion to Dismiss the Indictment Because the Evidence at Trial Prove [sic] a Fatal Variance from the Indictment,[1] Motion to Lower the Conspiracy Quantities of Drugs in Count One and Count Two,[2] and Motion for Mistrial Because the United States Informed the Jury of a Pay-Owe Sheet That Was Never Admitted Into Evidence.[3]  For the reasons explained below, the Motions are DENIED.

## BACKGROUND AND PROCEDURAL HISTORY[4]

### I.   Investigation and Arrest

In 2015, a confidential police informant approached Utah law enforcement with information about a drug trafficking organization (DTO) that was distributing methamphetamine,

---

[1] Dkt. 681, *Motion to Dismiss the Indictment Because the Evidence at Trial Prove [sic] a Fatal Variance from the Indictment* (*Motion to Dismiss*).

[2] Dkt. 684, *Motion to Lower the Conspiracy Quantities of Drugs in Count One and Count Two* (*Motion to Lower Quantities*).

[3] Dkt. 702, *Motion for Mistrial Because the United States Informed the Jury of a Pay-Owe Sheet That Was Never Admitted Into Evidence* (*Motion for Mistrial*).

[4] Given the parties' familiarity with the underlying facts of this longstanding case, the court will present only those facts necessary to establish context before turning to the pending Motions.  More detailed facts will be provided in analyzing the issues below.

1

cocaine, and heroin in the Salt Lake City area.[5]  The informant offered information about the DTO's leader, Hiram Gamaliel Perez-Tapia, and its major customers and sub-distributors.[6] Agents obtained a search warrant for Perez-Tapia's residence and seized 18 firearms, 628 grams of cocaine, and trace amounts of methamphetamine.[7]

The informant identified Flynn as one of Perez-Tapia's major customers and sub-distributors.[8]  According to the informant, fourteen of the eighteen firearms seized from Perez-Tapia's residence had been received from Flynn as payment for drugs.[9]  Law enforcement sought and obtained a wiretap of Flynn's phone to gather information about his illegal activities and identify other co-conspirators.[10]  Agents began intercepting Flynn's communications, including several conversations involving the exchange of guns for drugs and vice versa.[11]

Flynn was arrested on February 4, 2016.[12]  At his arrest, he possessed ounce-quantities of marijuana, cocaine, and methamphetamine, along with 128 grams of heroin.[13]  Flynn admitted to dealing drugs with Perez-Tapia but denied contact with most of the seized weapons.[14]

---

[5] *See* Dkt. 599-1, Exhibit *Affidavit of TFO Williamson in Support of Wiretap Application* (*Affidavit*) ¶ 10.

[6] *See* Dkt. 535, *United States' Opposition to Motion for Kotteakos Hearing* (*United States' Factual Proffer*) at 10–12; *see also Affidavit* ¶ 10.

[7] Dkt. 1, *Complaint* [Sealed] ¶ 3.

[8] *United States' Factual Proffer* at 11–12.

[9] *Complaint* ¶ 3.

[10] *United States' Factual Proffer* at 14–15.

[11] *See Complaint* ¶¶ 5–8.

[12] *Complaint* ¶ 11.

[13] *Id.*

[14] *Id.*

## II.      Flynn's Indictment and Pre-Trial Delays

Just before Flynn's arrest, a Grand Jury returned an Indictment charging Perez-Tapia and another member of the DTO.[15]  A Superseding Indictment was issued on February 10, 2016, following the arrests of Flynn and other members of the DTO.[16]  The Superseding Indictment charged Flynn with: (1) Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. § 846, (2) Conspiracy to Distribute Heroin in violation of 21 U.S.C. § 846, (3) Conspiracy to Distribute Cocaine in violation of 21 U.S.C. § 846, (4) Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A), and (5) Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(1).[17]

In the intervening years, Flynn regularly moved to continue trial as he cycled through numerous lawyers, each of whom needed time to review the voluminous discovery.[18]  Flynn also

---

[15] Dkt. 14, *Indictment*.

[16] Dkt. 21, *Superseding Indictment*.

[17] *Id.* (Counts 1, 2, 3, 6, 9).

[18] *See* Dkt. 9, *Appointment of Attorney Scott C. Williams for Flynn*; Dkt. 61, *Order Granting Motion to Substitute Attorney Michael J. Boyle*; Dkt. 139, *Minute Entry for Hearing Granting Boyle's Motion to Withdraw and Appointing CJA Counsel David Shapiro*; Dkt. 256, *Notice of Attorney Appearance of David V. Finlayson*; Dkt. 268, *Minute Entry: Hearing Granting Finlayson's Motion to Withdraw and appointing CJA Counsel Joel Kittrell*; Dkt. 282, *Minute Entry for Hearing Appointing CJA Counsel Fred Metos as Co-Counsel to Joel Kittrell*; Dkt. 300, *Order Granting Motion to Substitute Bel-Ami de Montreux*.

Flynn filed nine Motions to Continue before March 2020.  *See* Dkt. 67, *Motion to Continue Trial*; Dkt. 202, *Motion to Continue Trial*; Dkt. 262, *Stipulated Motion to Continue Trial*; Dkt. 271, *Stipulated Motion to Continue Trial*; Dkt. 275, *Stipulated Motion to Continue Trial*; Dkt. 286, *Motion to Continue*; Dkt. 299, *Motion to Strike or Reset Deadlines and Trial*; Dkt. 312, *Motion to Continue Trial and Extend Deadlines*; Dkt. 335, *Motion for Extension of Time to File Pretrial Motions*.  The court uniformly granted those motions, recognizing the difficulty new counsel faced in reviewing the voluminous discovery in this case.  *See, e.g.*, Dkt. 341, *Minute Entry for Hearing Granting Motion and Vacating Trial Date*.

filed two Motions to Suppress the wiretap evidence, which the court denied after receiving briefing and hearing oral arguments.[19]  Meanwhile, all other named Defendants pleaded guilty.[20]

By early 2020, it seemed the parties were finally ready for trial, and a trial was scheduled to begin March 31, 2020.[21]  In advance of trial, the United States obtained a Second Superseding Indictment, which omitted the other Defendants, dropped the Conspiracy to Distribute Cocaine count, but otherwise charged Flynn with counts identical to those in the Superseding Indictment.[22]

Unfortunately, the advent of the COVID-19 pandemic in March 2020 meant Flynn's trial date had to be continued.[23]  In the intervening two years, the pandemic caused additional delays,[24] Flynn changed counsel yet again,[25] and Flynn filed several Motions to Continue, mostly stipulated, in light of Flynn's new counsel needing time to obtain and review voluminous discovery.[26]  Following these delays, a trial date was eventually scheduled for February 1, 2022.[27]  In advance of that trial date, in December 2021, the court held two pre-trial

---

[19] Dkt. 167, *Motion to Suppress Wiretap I*; Dkt. 196, *Minute Entry: Motion Hearing re: Motion to Suppress I*; Dkt. 344, *Motion to Suppress Wiretap II*; Dkt. 350, *Minute Entry: Motion Hearing re: Motion to Suppress II*.

[20] *See* Dkt. 143, *Minute Entry: Change of Plea Hearing as to Linda Selsa Jaramillo*; Dkt. 173, *Minute Entry: Change of Plea Hearing as to Jesus Alberto Parra-Tizoc*; Dkt. 186, *Minute Entry: Change of Plea Hearing as to Hiram Gamaliel Perez-Tapia*; Dkt. 215, *Minute Entry: Change of Plea Hearing as to Isaac Mateo-Rodriguez*; Dkt. 221, *Minute Entry: Change of Plea Hearing as to Marcos Ivan Serrano-Serrano*.

[21] *See* Dkt. 354, *Minute Entry for Status Conference* (setting trial date of March 31, 2020).

[22] *See* Dkt. 371, *Second Superseding Indictment* (charging Flynn with Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 846 and punishable pursuant to 21 U.S.C. § 841(b)(1)(A), Conspiracy to Distribute Heroin in violation of 21 U.S.C. § 841(a)(1) and 846 and punishable pursuant to 21 U.S.C. § 841(b)(1)(A), Possessing a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A), and Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(1)).

[23] *See* Dkt. 388, *Order Excluding Time Under the Speedy Trial Act and Setting a New Trial Date*.

[24] *See* Dkt. 415, *Order Excluding Time*; Dkt. 420, *Order Excluding Time*; Dkt. 431, *Order Excluding Time*; Dkt. 478, *Order Excluding Time*; Dkt. 491, *Order Excluding Time*; Dkt. 499, *Order Excluding Time*.

[25] *See* Dkt. 407, *Order Granting Motion to Substitute Michael J. Boyle*.

[26] *See* Dkt. 443, *Motion to Continue Trial*; Dkt. 476, *Stipulated Motion to Continue Trial*; Dkt. 489, *Stipulated Motion to Continue Trial*; Dkt. 497, *Stipulated Motion to Continue Trial*.

[27] *See* Dkt. 507, *Amended Trial Order*.

conferences and resolved several Motions in Limine and three more Motions to Suppress the wiretap evidence filed by Flynn.[28]

The Omicron wave of the COVID-19 pandemic hit the District of Utah in early 2022, causing the court to enter a general order vacating all jury trials between January 5, 2022, and February 15, 2022.[29]  Flynn's trial date was continued and reset to start July 26, 2022.[30]

Shortly before his trial date was continued, Flynn moved for a *Faretta* hearing to represent himself with court-appointed standby counsel.[31]  After a hearing on the matter, Magistrate Judge Jared C. Bennett found that Flynn knowingly and voluntarily waived his right to counsel and granted his then-attorney's Motion to Withdraw.[32]  Flynn has proceeded pro se since that time.

On February 15, 2022, Flynn filed a Motion to Reset Motion Deadlines, explaining that he "went pro se [because] he believe[d] that his lawyer at the time was purposely [sabotaging] his case" and that he wanted the chance to submit motions and make arguments that his previous attorneys would not make on his behalf.[33]  The court granted that Motion in part, allowing Flynn to file three more Motions to Suppress and one Motion to Dismiss.[34]  The court denied those Motions in a written ruling on June 15, 2022.[35]

---

[28] *See* Dkt. 555, *Minute Entry for Pretrial Conference held on 12/16/2021*; Dkt. 558, *Minute Entry for Pretrial Conference held on 12/29/2021*.

[29] *See* Dkt. 583, *Order to Continue* at 2.

[30] *Id.* at 5.

[31] Dkt. 559, *Motion to Expedite Faretta Hearing*; *see also Faretta v. California*, 422 U.S. 806 (1975).

[32] Dkt. 562, *Minute Entry for Faretta Hearing*.

[33] Dkt. 584, *Motion to Reset Deadlines* at 1–2.

[34] *See* Dkt. 589, *Minute Entry: March 4, 2022 Status Conference*. *See* Dkt. 591, *Motion to Dismiss Second Superseding Indictment*; Dkt. 597, *Motion to Dismiss Second Superseding Indictment*. Dkt. 596, *Motion to Suppress*.

[35] Dkt. 625, *Order Denying Motions to Suppress and Motions to Dismiss*.

### III.    Trial

Flynn's jury trial began on July 26, 2022, and lasted seven days.[36]  The United States elicited testimony from over a dozen witnesses, including many officers from the federal Drug Enforcement Agency (DEA) and Perez-Tapia.[37]  The informant did not testify, as she had passed away during the case's pendency.[38]  The evidence included firearms, drugs, text message exchanges between Flynn and Perez-Tapia, and audio of wiretap conversations between Flynn and Perez-Tapia.[39]  Federal officers testified to the relevance and authenticity of the evidence.

Flynn proceeded on a theory that Perez-Tapia was a liar,[40] the wiretaps and phone pings were plagued with inconsistencies,[41] and that federal officers provided conflicting testimony and never saw Flynn deal drugs.[42]

On August 3, 2022, the jury returned a guilty verdict on all four counts.[43]  The court then gave Flynn until Friday, September 2, 2022, (thirty days) to file post-trial motions.[44]  Shortly before his time expired, Flynn filed a Motion for Assistance to Get Transcripts, explaining the

---

[36] *See* Dkt. 658, *Minute Entry*: *Trial Day 1, July 26, 2022*; Dkt. 659, *Minute Entry*: *Trial Day 2, July 27, 2022*; Dkt. 668, *Minute Entry*: *Trial Day 3, July 28, 2022*; Dkt. 669, *Minute Entry*: *Trial Day 4, July 29, 2022*; Dkt. 670, *Minute Entry*: *Trial Day 5, August 1, 2022*; Dkt. 671, *Minute Entry*: *Trial Day 6, August 2, 2022*; Dkt. 672, *Minute Entry*: *Trial Day 7, August 3, 2022.*

[37] Dkt. 659, *Minute Entry*: *Trial Day 2, July 27, 2022*; Dkt. 668, *Minute Entry*: *Trial Day 3, July 28, 2022*; Dkt. 669, *Minute Entry*: *Trial Day 4, July 29, 2022*; Dkt. 670, *Minute Entry*: *Trial Day 5, August 1, 2022*; Dkt. 671, *Minute Entry*: *Trial Day 6, August 2, 2022.*

[38] Dkt. 625 at 48.

[39] Dkt. 627, *Exhibit List.*

[40] Dkt. 731, *Trial Transcript Day 7* at 1231.

[41] *Id.* at 1245.

[42] *Id.* at 1238–43.

[43] Dkt. 673, *Jury Verdict.*

[44] *Trial Transcript Day 7* at 1285.

transcripts were necessary to his post-trial motions.[45]  Meanwhile, Flynn filed eleven post-trial Motions.[46]  The government filed Oppositions to the Motions by October 20, 2022.[47]

The court held a hearing on October 7, 2022 to discuss the status of the post-trial motions and production of the trial transcript.[48]  Flynn had not yet received the transcript so the court arranged for his stand-by counsel to deliver the transcript to him at jail.[49]  Flynn was given until November 29, 2022, to file Replies in support of his post-trial motions.[50]  A hearing was set for December 22, 2022, to rule on the post-trial motions.[51]

At the same time, Flynn was set for sentencing.[52]  Flynn moved the court to extend sentencing until after the post-trial motions were decided but the court denied that motion.[53] Flynn was sentenced to 236 months with credit for time served.[54]

---

[45] Dkt. 692, *Motion for Transcripts*.

[46] Dkt. 680, *Motion for New Trial and/or Dismissal of the Case*; Dkt. 681, *Motion to Dismiss the Indictment Because the Evidence at Trial Prove a Fatal Variance from the Indictment*; Dkt. 682, *Motion for a New Trial and to Suppress All Evidence Handled by Agent Amy Deneff*; Dkt. 684, *Motion to Lower the Conspiracy Quantities of Drugs in Count One and Count Two*; Dkt. 685, *Motion to Overturn the Jury's Verdict of Guilty to a Verdict of Not Guilty on All Counts or At Least Make the Right Decisions*; Dkt. 688, *Motion to Suppress Wiretap Evidence and All Fruits Derived Therefrom*; Dkt. 689, *Motion to Unstrike Motion to Suppress*; Dkt. 691, *Motion for a Mistrial the Court and Prosecution Committed an Important Legal Error*; Dkt. 693, *Motion for Mistrial Based on Juror Misconduct for Falling Asleep During Testimony*; Dkt. 695, *Motion for Mistrial because Agent Guillen Testified He Does Not Recall the Alleged Confession but was Granted by the Court to Allow His Testimony About It In Front of the Jury*; Dkt. 702, *Motion for Mistrial Because the United States Informed the Jury of a Pay-Owe Sheet That was Never Admitted Into Evidence*.

[47] *See generally* Dkts. 722–27; Dkts. 733–35; Dkts. 739–40.

[48] Dkt. 721, *Minute Entry Oct. 7, 2022*.

[49] *Id.*

[50] Dkt. 759, *Docket Text Order Granting Motion for Extension of Time*.

[51] Dkt. 749, *Notice of Hearing*.

[52] Dkt. 763, *Notice of Hearing*.

[53] Dkt. 764, *Motion to Extend Sentencing Until All Post-Trial Motions are Ruled on by the Court*; Dkt. 767, *Docket Text Order Denying Motion to Extend Sentencing*.

[54] Dkt. 773, *Minute Entry for Dec. 12, 2022 Sentencing*.

Shortly before the court was set to rule on the post-trial motions, Flynn filed a new Motion for Supplemental Briefing.[55]  Specifically, Flynn requested the opportunity to "support his argument with trial transcripts."[56]  Because Flynn did not receive the transcript until after he finished briefing the post-trial motions, and the United States had full access to the transcript in their briefing, Flynn argued it would be "unfair prejudice" to deny him the opportunity to "file additional information to his motions using the trial transcripts."[57]

In an oral ruling delivered at the scheduled time to rule on the post-trial motions, the court granted in part the Motion for Supplemental Briefing.[58]  The court determined three post-trial motions did not require additional briefing and issued oral rulings denying the motions at the hearing.[59]  One motion was denied as moot in a docket text order.[60]  The court granted Flynn's motion for supplemental briefing on the seven remaining post-trial motions:

1. [Dkt. 680] Motion for New Trial and/or Dismissal of the Case

2. [Dkt. 681] Motion to Dismiss Indictment Because the Evidence At Trial Proved A Fatal Variance from the Indictment

3. [Dkt. 684] Motion to Lower the Conspiracy Quantities of Drugs in Count One and Count Two

4. [Dkt. 685] Motion to Overturn the Jury's Verdict of Guilty to a Verdict of Not Guilty on All Counts (or At Least Make the Right Decisions)

5. [Dkt. 691] Motion for Mistrial (the Court and Prosecution Committed an Important Legal Error)

---

[55] Dkt. 778, *Motion Requesting the Court to Allow Mr. Flynn to File Additional Information to his Post-Trial Motions Because He Never Had His Trial Transcripts to Include with His Arguments in His Motions.*

[56] *Id.* at 1.

[57] *Id.* at 2.

[58] Dkt. 783, *Minute Entry for Dec. 22, 2022.*

[59] *Id.*

[60] Dkt. 747, *Order Denying as Moot Motion to Unstrike* [Dkt. 689].

6. [Dkt. 695] Motion for Mistrial Because Agent Robert Guillen Testified He Does Not Recall The Alleged Confession but was Granted by the Court to Allow His Testimony About It In Front of the Jury

7. [Dkt. 702] Motion for Mistrial Because the United States Informed the Jury of a Pay-Owe Sheet That Was Never Admitted Into Evidence

The court set a supplemental briefing schedule with the intention of scheduling a hearing to rule on the motions after briefing was complete.[61]  However, the court stayed the briefing the next month to allow the Federal Bureau of Prisons sufficient time to designate and transport Flynn to a facility and to allow stand-by counsel additional time to ensure Flynn received his copy of the transcript.[62]

On May 9, 2023, the court received notice that Flynn had been placed in a facility and received his copy of the trial transcript.[63]  The next day, the court entered a new supplemental briefing schedule.[64]

Now that supplemental briefing is complete, and finding oral argument will not be materially helpful, the court is prepared to rule.  Due to the quantity of post-trial motions and issues for review, the court will take up the motions in separate companion orders.  This Order addresses only the Motion to Dismiss the Indictment,[65] the Motion to Lower the Conspiracy Quantities of Drugs in Count One and Count Two,[66] and the Motion for Mistrial Because the United States Informed the Jury of a Pay-Owe Sheet That Was Never Admitted Into Evidence.[67]

---

[61] Dkt. 783.

[62] Dkt. 789, *Order Granting Motion for Extension of Time and Staying Post-Trial Supplemental Briefing Deadlines.*

[63] Dkt. 794, *Notice Regarding Trial Transcripts.*

[64] Dkt. 796, *Order Granting Motion for Extension of Time.*

[65] Dkt. 681, *Motion to Dismiss.*

[66] Dkt. 684, *Motion to Lower Quantities.*

[67] Dkt. 702, *Motion for Mistrial.*

**LEGAL STANDARDS**

Flynn proceeds pro se.  While the court "liberally construe[s] pro se pleadings," "pro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules."[68]  Additionally, when a criminal defendant "intelligently and voluntarily waive[s] his Sixth Amendment right of active participation and assistance of trial counsel," that defendant receives "no greater rights than a defendant represented by counsel . . . and the trial court is under no obligation to become an advocate or to assist and guide the pro se layman through the trial thicket."[69]

**ANALYSIS**

In separate post-trial motions, Flynn moves to dismiss the indictment due to an alleged fatal variance between the charged offenses and the proof offered at trial,[70] he moves to lower the conspiracy quantity of drugs in counts one and two for sentencing purposes,[71] and requests a mistrial based on documents referenced at trial that were not admitted into evidence.[72]  The court will address each motion in turn, beginning with the relevant governing legal standards before analyzing the individual requests for relief.

## I.  MOTION TO DISMISS THE INDICTMENT DUE TO A FATAL VARIANCE

Flynn argues the court must dismiss the indictment because there was a variance between the charged offenses and the proof offered at trial.[73]  The Government argues there was no

---

[68] *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citation omitted); *see also United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019) (applying same standard to pro se criminal defendant).

[69] *United States v. White*, 68 F. App'x 870, 874–75 (10th Cir. 2003) (citing *United States v. Pinkey*, 548 F.2d 305, 311 (10th Cir. 1977) (internal quotation marks omitted)).

[70] Dkt. 681, *Motion to Dismiss*.

[71] Dkt. 684, *Motion to Lower Quantities*.

[72] Dkt. 702, *Motion for Mistrial*.

[73] Dkt. 681 at 1.

variance because "none of the evidence at trial proved facts materially different from those in the indictment," and even if the evidence varied from the indictment Flynn was not prejudiced by it.[74]  The Government is correct.

"It is a fundamental precept of federal constitutional law that a court cannot permit a defendant to be tried on charges that are not made in the indictment."[75]  Thus, "when the evidence adduced at trial establishes facts different from those alleged in the indictment," a variance arises that implicates constitutional rights.[76]

Courts recognize two types of variances, "similar in kind and different in degree."[77]  The first are simple variances which occur when the charging terms are unchanged but the evidence at trial proves materially different facts.[78]  Simple variances are not enough to overturn a conviction unless "the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him or is exposed to the risk of double jeopardy."[79]

The second type of variance is a constructive amendment to the indictment.[80]  "An indictment is constructively amended if the evidence presented at trial, together with the jury

---

[74] Dkt. 727, *United States' Memorandum in Opposition to Defendant's Motion To Dismiss for Variance from Indictment* (*Opp'n to MTD for Variance*) at 3.

[75] *Hunter v. New Mexico*, 916 F.2d 595, 598 (10th Cir. 1990) (quoting *Stirone v. United States*, 361 U.S. 212, 217 (1960)).

[76] *See United States v. McIntosh*, 514 F. App'x 783, 789 (10th Cir. 2013).

[77] *United States v. Williamson*, 53 F.3d 1500, 1512–13 (10th Cir. 1995).

[78] *United States v. Teague*, 12 F. App'x 759, 765 (10th Cir. 2001).

[79] *Id.* (internal citations and quotations omitted); *see also McIntosh*, 514 F. App'x at 791 ("Prejudice may result if the defendant could not have anticipated from the indictment what the evidence would be at trial, or when the jury is more likely than not to impute evidence related to separate conspiracies to the defendant." (internal citations omitted)).

[80] *Williamson*, 53 F.3d at 1513.

instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment."[81]  Constructive amendments are reversible per se.[82]

Discerning the difference between the two types of variances is "shadowy at best."[83]  The court is required to "examine the record as a whole" to determine if a variance occurred, the type of variance, and whether the defendant suffered prejudice from the variance.[84]  Here, Flynn does not argue a constructive amendment.[85]  The court thus faces two questions.  First, was there a simple variance, namely, did the evidence at trial prove different facts from the indictment?[86] "Second, if there was a variance, was that variance substantially prejudicial" to Flynn?[87]  Flynn bears the burden to prove both that a variance occurred, and that it was prejudicial.[88]

Flynn identifies three pieces of evidence which allegedly varied from the indictment and prejudiced him: 1) cocaine sales, 2) drug activity in Arizona, and 3) weapons from other offenses.[89]  The court addresses each in turn.

### a.  Cocaine Sale

At trial, the government introduced evidence of cocaine sales involving Flynn.  Flynn now argues this evidence was used to find him guilty on the methamphetamine and heroin conspiracy charges.[90]  And because cocaine was not part of the operative indictment at the time

---

[81] *Hunter v. State of N.M.*, 916 F.2d 595, 599 (10th Cir. 1990).

[82] *Id.*

[83] *Id.*

[84] *See Teague*, 12 F. App'x at 765.

[85] *See* Dkt. 681 at 1–2.

[86] *See United States v. Serrato*, 742 F.3d 461, 467 (10th Cir. 2014).

[87] *Id.*

[88] *See United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007).

[89] Dkt. 681 at 1–2.

[90] *Id.* at 1.

of trial, Flynn argues the introduction of this evidence constitutes a variance that affected his

constitutional rights.[91]  In response, the government argues the evidence of cocaine sales was

"tangential and connected to the overall conspiracy to distribute methamphetamine and

heroin."[92]  Additionally, the government argues Flynn cannot show prejudice because he "was

the source of most of the evidence at trial that referred to cocaine."[93]

  The government is correct on both accounts.  First, there was no simple variance for this

issue.  The evidence at trial proved the charges in the indictment—namely a methamphetamine

and heroin conspiracy—not a cocaine conspiracy.  The wiretapped conversation of cocaine sales

was minor in relation to the large amounts of evidence establishing sales of methamphetamine

and heroin.  Wiretapped conversations discussed methamphetamine and heroin sales,[94] witnesses

testified about transporting loads of methamphetamine and heroin,[95] and witnesses discussed the

amounts of methamphetamine and heroin sold.[96]  The bulk of the evidence introduced proved the

charges in the indictment.  Additionally, the jury instructions informed the jury that Flynn was

on trial only for the crimes charged in the indictment.[97]  The instructions explicitly laid out the

drug charges, stating: "The first two counts relate to Mr. Flynn's involvement in a conspiracy to

---

[91] *Id.*

[92] Dkt. 727 at 2.

[93] *Id.*

[94] *See, e.g.*, *Trial Transcript Day 2* at 59 ("Then there is reference to, well, I need some dark or I need some white and they are referencing either—the dark is usually a reference to heroin and the white is usually a reference to methamphetamine.").

[95] *See, e.g., Trial Transcript Day 4* at 53 ("You know, with Elizabeth we were doing trips back and forth to, you know, to get the drugs.").

[96] *Id* at 56–57 ("When [Flynn] came in the business, you know, become part of the business we, you know, went up to, I give him about a pound [of methamphetamine] a day, and sometimes at some point we were like about three pounds a day . . . Well, we start with about two to four ounces [of heroin per day].").

[97] Dkt. 674, *Jury Instructions* nos. 7 & 8 ("Mr. Flynn is not on trial for any act or any conduct not specifically charged in the Indictment.").

distribute illegal drugs, specifically Methamphetamine and Heroin."[98]  Finally, the jury verdict form also clearly indicated the conspiracy charges were for methamphetamine and heroin.[99]

Second, even if there was a variance Flynn cannot show prejudice.  In closing arguments, Flynn repeatedly informed the jury that the drug conspiracy charges were for methamphetamine and heroin only, not cocaine, even though in his words it was a "cocaine conspiracy."[100]  In fact, Flynn tried to use the evidence of cocaine sales to undermine the government's case against him for methamphetamine and heroin conspiracy, arguing this was "not a distribution of methamphetamine or heroin conspiracy . . . charge me with cocaine conspiracy and I will answer to those charges."[101]  And again, "I am not charged with cocaine, but let the prosecutor charge me with cocaine.  Let me face those cocaine charges.  Don't find me guilty because I sold cocaine.  That is not meth.  That is not heroin."[102]  The government also clearly stated in closing arguments that the facts established this was a conspiracy to distribute methamphetamine and heroin, not cocaine.[103]  In light of these facts and the evidence at trial, it is highly unlikely that the jury imputed the cocaine evidence to establish guilt for the methamphetamine and heroin charges.  Thus, there is no variance based on evidence of cocaine sales.

### b.  Drug Activity in Arizona

In the context of explaining the drug conspiracy, the United States introduced evidence showing Flynn's supplier obtained drugs from Arizona.  Flynn argues this evidence varied from

---

[98] *Id.* at no. 28.

[99] Dkt. 673, *Verdict Form* at 1–2.

[100] *Trial Transcript Day 7* at 1228, 1238, 1242, 1250 ("Again, the conspiracy is 500 grams or more of meth, one kilo or more of heroin, not a conspiracy to distribute cocaine.").

[101] *Id.* at 1228.

[102] *Id.* at 1242.

[103] *Id.* at 1266–67 ("[The witness] wouldn't have to go and get more methamphetamine and heroin if this were just a cocaine conspiracy because they had cocaine.  This is a methamphetamine and heroin drug trafficking organization.").

the indictment because the charges were for a drug conspiracy in Utah.[104]  The government

argues this evidence "speaks directly to an essential element of conspiracy" charged in the

indictment and Flynn "was not prejudiced in any way."[105]  Again, the government is correct.

Flynn was charged with conspiring to distribute methamphetamine and heroin in Utah.[106]

Evidence of suppliers and traffickers in Arizona represents a variance only if it proves different

facts than the indictment.[107]  Presumably, Flynn is implying the Arizona evidence goes to an

unrelated drug trafficking conspiracy in Arizona and cannot go to proving a conspiracy to

distribute in Utah.[108]  But evidence of co-conspirators in one region can be used to support a

conspiracy in another region, if it is shown the two conspiracies share "a common unlawful goal

or purpose."[109]

In *United States v. Serrato*, the Tenth Circuit held there was no variance from an

indictment after a jury used evidence from a co-conspirator in Washington to find a drug

conspiracy in Utah.[110]  The Washington co-conspirator worked alongside a Utah defendant with

a "shared objective of distributing drugs from a common source."[111]  The evidence before the

jury allowed it to "draw the conclusion that there existed an ongoing, facilitative relationship

between the parties who were aware of the scope of one another's activities."[112]

---

[104] Dkt. 681 at 1–2.

[105] Dkt. 727 at 2.

[106] Dkt. 371, *Second Superseding Indictment* at 1–2.

[107] *See Serrato*, 742 F.3d at 467.

[108] Dkt. 681 at 1–2.

[109] *United States v. Mier-Garces*, 967 F.3d 1003, 1024 (10th Cir. 2020).

[110] *Serrato*, 742 F.3d at 467–48.

[111] *Id.* at 468 (internal citations and quotations omitted).

[112] *Id.* (internal citations and quotations omitted).

The same conclusion is warranted here.  The Arizona co-conspirators were introduced merely as individuals with an ongoing relationship as suppliers for the Utah organization.[113]  The court limited the scope of the Arizona evidence to the facts necessary to prove the indictment, allowing evidence of the Arizona co-conspirators' role as drug suppliers for the Utah organization only and not allowing testimony to expand to Arizona trafficking activities unrelated to the Utah conspiracy.[114]  Flynn clarified the role of the Arizona evidence, asking "[t]his whole operation in Arizona has nothing to do with me then," and the witness explained "this [Utah] organization goes all the way to the cartel based in Phoenix[.]  They are the suppliers."[115]  Thus, the Arizona evidence at trial did not prove materially different facts from the indictment.  It went directly to proving the charged crimes of a Utah drug trafficking conspiracy.

Moreover, Flynn has not shown prejudice.  Beyond stating the evidence was prejudicial, Flynn does not argue or show how his defense was hampered "by an inability to anticipate the government's evidence against him."[116]  Nor does he argue it was more likely than not the jury imputed to him evidence related to a separate conspiracy.[117]  So no variance occurred with respect to the evidence of drug activity in Arizona.

### c.  Weapons from Other Offenses

Finally, Flynn argues there was a variance from the indictment because evidence of multiple firearms was introduced when Flynn was charged only with possession of a single

---

[113] *See, e.g.*, *Trial Transcript Day 2* at 347–39.

[114] *See id.*

[115] *Id.* at 350.

[116] *See Teague*, 12 F. App'x at 766.

[117] *See McIntosh*, 514 F. App'x at 791.

firearm—a Cobra Enterprise .380 caliber pistol (Cobra).[118]  The government argues the firearm evidence was "appropriately admitted" to show the existence of a conspiracy and not "an introduction of new charges that altered the indictment."[119]  Viewing the record as a whole, there is no variance.  The additional firearms evidence was used to prove conspiracy and not to establish the charges for possessing the Cobra.

At trial, the government introduced evidence of the firearms through a variety of sources.[120]  The government explained the relevance of firearms generally through an expert testifying on drug trafficking organizations.[121]  A federal agent related how firearms are used by drug trafficking organizations to threaten violence and as "a monetary instrument."[122]  Separate testimony of a co-conspirator was used to establish the relevance of the Cobra.[123]  The co-conspirator easily recalled the Cobra because of its identifiable features and testified that Flynn had offered the Cobra as payment for drugs.[124]

Then in closing arguments, the government clarified how the evidence supported the different charges.  The prosecutor introduced the possession charge by stating, "I'm going to talk about the possession of the *Cobra* firearm in relation to furtherance of drug trafficking and possession of a firearm by a restricted person."[125]  He told the jury an element of the charges was "possession of that Cobra .380."[126]  The prosecutor further explained, "The other guns are

---

[118] *See* Dkt. 681 at 2.

[119] Dkt. 727 at 3.

[120] Dkt. 676, *Exhibit List* at 1.

[121] *Trial Transcript Day 6* at 1091–92, 1103–1105.

[122] *Id.* at 1103–05.

[123] *Trial Transcript Day 4* at 629–31.

[124] *Id.*

[125] *Trial Transcript Day 7* at 1215.

[126] *Id.*

relevant to the case but not to those particular [possession charges].  The other guns were money, currency, and that is how Mr. Flynn paid for drugs."[127]  Finally, the jury instructions on both possession counts named the Cobra as the firearm relevant to the charge.[128]  These facts establish the additional firearm evidence was not used to prove the possession charges at trial.  There was no variance in the indictment.

Even if there was a variance, Flynn does not show he was prejudiced by this evidence. Beyond stating the variance prejudiced him, Flynn does not make any actual claims of prejudice. He does not claim he suffered an inability to anticipate the evidence to be presented against him or that the jury likely imputed the evidence of additional firearms to the possession charges.[129]

Because Flynn fails to identify evidence that varied from the charges in the indictment, the court denies his Motion to Dismiss the Indictment Because the Evidence at Trial Prove a Fatal Variance From the Indictment.[130]

## II.  MOTION TO LOWER THE CONSPIRACY QUANITTIES OF DRUGS

Flynn next argues there was insufficient evidence to support the jury verdict.[131] Specifically, he alleges the evidence at trial does not show "the threshold amount of 500 grams or more of methamphetamines and one kilogram of heroin was []ever distributed by anyone."[132] A sufficiency of the evidence challenge after trial may be raised in a motion for new trial under Federal Rule of Criminal Procedure 33 or a renewed motion for judgment of acquittal under Rule

---

[127] *Id.* at 1217.

[128] Dkt. 674, *Jury Instruction* no. 28.

[129] *See McIntosh*, 514 F. App'x at 791 (finding no prejudice without a showing of an inability to anticipate evidence or imputing improper evidence to separate charges); *see also Teague*, 12 F. App'x at 765–66 (same).

[130] Dkt. 681.

[131] *See* Dkt. 684, *Motion to Lower Quantities* at 1.

[132] *Id.*

29.[133]  Although Flynn does not identify the procedural mechanism for his motion, both

challenges "are adjudicated and reviewed under the same standard."[134]  Flynn's Motion fails to

qualify for relief under that standard.

The Tenth Circuit has noted "it is difficult to succeed" with a sufficiency of the evidence

challenge because reversal is granted "only if no rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt."[135]  This presents a "high hurdle" for

criminal defendants.[136]  While the evidence must "do more than raise a mere suspicion of guilt,"

it "need not conclusively exclude every other reasonable hypothesis and it need not negate all

possibilities except guilt."[137]  The court asks whether a reasonable jury could find the defendant

guilty in view of all the evidence "both direct and circumstantial," and all "reasonable

inferences" should be drawn "in the light most favorable to the government."[138]

The essential elements to prove conspiracy to distribute drugs are "(1) an agreement with

another person to violate the Controlled Substance Act; (2) knowledge of the essential objectives

of the conspiracy; (3) knowing and voluntary involvement; and (4) interdependence among the

alleged conspirators."[139]  Importantly, when charged with conspiracy to distribute, "[a] defendant

can be held accountable for that drug quantity which was within the scope of the agreement and

reasonably foreseeable to him."[140]  Indeed, a defendant "may be sentenced on the basis of

---

[133] *See United States v. Dewberry*, 790 F.3d 1022, 1028–32 (10th Cir. 2015); *see also* Fed. R. Crim. P. 29, 33.

[134] *Dewberry*, 790 F.3d at 1028.

[135] *United States v. Wilson*, 244 F.3d 1208, 1219 (10th Cir. 2001) (internal citations and quotations omitted).

[136] *United States v. Voss*, 82 F.3d 1521, 1524 (10th Cir. 1996).

[137] *United States v. Morrow*, No. 98-40040-02-SAC, 1998 WL 1054230, at *1 (D. Kan. Dec. 22, 1998), *aff'd*, 208 F.3d 228 (10th Cir. 2000) (internal citations and quotations omitted).

[138] *Voss*, 82 F.3d at 1524–25 (internal citations and quotations omitted).

[139] *United States v. Renteria*, 720 F.3d 1245, 1253 (10th Cir. 2013) (citing 21 U.S.C. § 841 (a)(1)).

[140] *Dewberry*, 790 F.3d at 1030.

[drugs] possessed by another conspirator, so long as the amount is within the scope of the conspiracy and foreseeable."[141]

Under this standard, there was sufficient evidence for the jury to find Flynn guilty of distributing 500 grams or more of methamphetamine and one kilogram or more of heroin.  First, the evidence establishes Flynn conspired to distribute those quantities.  In recordings of wiretapped phone calls, Flynn claimed he sold $720,000 worth of drugs.[142]  Detectives investigating the conspiracy estimated Flynn sold drugs for approximately five months, charging $5,500 to $6,000 for a pound of methamphetamine and $900 for an ounce of heroin.[143]  Based on evidence of the amount Flynn sold and the price in weight, coupled with reasonable inferences, there is a factual basis for the verdict's drug quantities.

Second, Flynn is also liable for the quantities distributed by his co-conspirator, because they were within the scope of the conspiracy.  Flynn's co-conspirator testified to distributing between 10–17 pounds of methamphetamine and 1–1.5 kilograms of heroin a week.[144]  It is reasonable and foreseeable to include these amounts in the scope of the conspiracy as recorded phone calls show Flynn knew the objective of the organization was to sell drugs and was aware of the large amounts of drug sales by co-conspirators.[145]  This provides an alternative evidentiary basis to support the drug amounts found in the verdict.

In reviewing Flynn's sufficiency of the evidence challenge, the court concludes a reasonable jury could find that Flynn conspired to distribute more than 500 grams of

---

[141] *United States v. Arias-Santos*, 39 F.3d 1070, 1078 (10th Cir. 1994).

[142] *See Trial Transcript Day 5* at 935.

[143] *See Trial Transcript Day 4* at 616, 697; *Trial Transcript Day 5* at 938; *Trial Transcript Day 6* at 1022; *Trial Transcript Day 7* at 1212.

[144] *Trial Transcript Day 4* at 605.

[145] *See, e.g.*, Trial Exhibits 38-A, B, C.

methamphetamine and one kilogram of heroin based on the evidence presented.  The Motion to Lower the Conspiracy Quantities of Drugs in Count One and Count Two[146] is therefore denied.

### III.  MOTION FOR A MISTRIAL

Lastly, Flynn moves for a mistrial on the grounds that the government referred to a pay-owe sheet in front of the jury without introducing it into evidence.[147]  Flynn alleges any pay-owe sheet did not belong to him and he suffered prejudice as a result of the improper reference.  The government argues a mistrial is not necessary.[148]  Any references to pay-owe sheets were made to lay a foundation for their introduction—an effort the government ultimately abandoned.[149]  The government contends the sheets were not received in evidence and their contents were never disclosed to the jury.[150]  Further, according to the government, testimony referring to the sheets had independent relevance as it demonstrated the roles of members in the conspiracy and corroborated information from a confidential source.[151]  Again, the government is correct.

A district court may grant a mistrial only "where a defendant's right to a fair and impartial trial has been impaired."[152]  In other words, a mistrial is appropriate only in circumstances where the court, exercising its "sound discretion," determines "there is a manifest necessity for doing so."[153]  "[T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes."[154]

---

[146] Dkt. 684.

[147] Dkt. 702, *Motion for Mistrial* at 1.

[148] Dkt. 725, *United States' Memorandum in Opposition to Defendant's Motion for a Mistrial*.

[149] *Id.* at 2.

[150] *Id.*

[151] *Id.*

[152] *United States v. Kravchuk*, 335 F.3d 1147, 1155 (10th Cir. 2003) (citing *United States v. Caballero*, 277 F.3d 1235, 1242 (10th Cir. 2002)).

[153] *Renico v. Lett*, 559 U.S. 766, 774 (2010) (internal quotations and citations omitted).

[154] *Id.*

Flynn's Motion demonstrates no impairment of his right to a fair trial nor "manifest necessity" warranting a mistrial.  First, the government questioned Agent Fairbanks to establish a foundation for introducing the purported pay-owe sheets into evidence, but ultimately abandoned this effort and did not disclose the contents of the sheets to the jury.[155]  No reference was made to Flynn in conjunction with the pay-owe sheets.  Agent Fairbanks testified to his general knowledge of how DTOs use pay-owe sheets, based on his years of professional experience.[156] He confirmed the formatting and appearance of the sheets recovered from the confidential informant's phone.[157]  However, the government then decided not to proceed with introducing the sheets in evidence and moved on.[158]  The jury did not see the sheets and Flynn was not discussed in relation to them.  The brief discussion of pay-owe sheets in this context in no way impaired Flynn's right to a fair trial.

Second, pay-owe sheets were again briefly raised in Perez-Tapia's testimony.[159]  The government asked Perez-Tapia if his partner—the government's confidential informant—kept records concerning money that was owed.[160]  He testified she did and that they had discussions concerning Flynn to ensure the records were accurate.[161]  The government then moved on.  There was no discussion of the details of the pay-owe sheets, and they were not referenced in front of the jury again.   This passing reference—lacking any detail about the contents of the pay-owe sheets or any data pertaining to Flynn—posed no prejudice to Flynn.

---

[155] *Trial Transcript Day 2* at 74–81.

[156] *Id.* at 74–75.

[157] *Id.* at 75–81.

[158] *Id.* at 81.

[159] *Trial Transcript Day 4* at 74–76.

[160] *Id.* at 74.

[161] *Id.* at 76.

The court finds the brief references—neither of which substantively discussed the contents of the sheets—to pay-owe sheets over the course of a week of witness testimony did not impair Flynn's right to a fair trial.  There is no "manifest necessity" for granting a mistrial. Therefore, Flynn's Motion for Mistrial[162] is denied.

**CONCLUSION**

For the reasons stated above:

- Flynn's Motion to Dismiss the Indictment Because the Evidence at Trial Prove a Fatal Variance from the Indictment[163] is DENIED.

- Flynn's Motion to Lower the Conspiracy Quantities of Drugs in Count One and Count Two[164] is DENIED.

- Flynn's Motion for a Mistrial Because the United States Informed the Jury of a Pay-Owe Sheet That was Never Admitted into Evidence[165] is DENIED.

SO ORDERED this 3rd day of November 2023.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[162] Dkt. 702.

[163] Dkt. 681.

[164] Dkt. 684.

[165] Dkt. 702.